**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

JUAN MARTINEZ, a/k/a Jesus Garcia,
a/k/a Roberto Gonzalez,
          *Defendant-Appellant.*

No. 00-4245

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
William L. Osteen, District Judge.
(CR-99-145)

Argued: September 28, 2001

Decided: January 17, 2002

Before LUTTIG, TRAXLER, and KING, Circuit Judges.

---

Affirmed by published opinion. Judge King wrote the majority opinion, in which Judge Traxler joined. Judge Luttig wrote a concurring opinion.

---

## COUNSEL

**ARGUED:** Paul Craig Pooley, Durham, North Carolina, for Appellant. Clifton Thomas Barrett, Assistant United States Attorney/Chief, Criminal Division, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Walter C. Holton, Jr., United States Attorney, Greensboro, North Carolina, for Appellee.

**OPINION**

KING, Circuit Judge:

Appellant Juan Martinez challenges his convictions and sentence in the Middle District of North Carolina on one count of conspiring to distribute cocaine and marijuana, in violation of 21 U.S.C. § 846, and on four counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1). Martinez makes two basic contentions on appeal: first, that the district court, in four separate contexts, committed reversible error in accepting his guilty pleas, and, second, that the statute which forms the object of his conspiracy conviction, 21 U.S.C. § 841, is unconstitutional in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). We conclude that these contentions are without merit, and we affirm.

I.

On May 25, 1999, Martinez, who was also known as Roberto Gonzalez and Jesus Garcia, was indicted, along with five others, on various charges relating to a drug distribution scheme in North Carolina and elsewhere. The indictment contained sixteen counts, eight of which (Count One plus Counts Eight through Fourteen) were against Martinez. In Count One, Martinez and his co-defendants were charged with conspiring, in violation of 21 U.S.C. § 846, to commit offenses involving controlled substances, that is, the distribution of cocaine and marijuana, in violation of 21 U.S.C. § 841(a)(1). The remaining seven charges against Martinez related to violations of the money laundering statute, 18 U.S.C. § 1956(a)(1). The grand jury issued a superseding indictment a month later, which changed Count One only and named two additional co-conspirators. The superseding indictment, which is the operative charge in this appeal (the "Indictment"), made no substantive changes to the eight charges levied against Martinez.

On November 29, 1999, the Government and Martinez entered into a plea agreement, which was filed with the court on that same day. The plea agreement provided, inter alia: (1) that Martinez would plead guilty to the conspiracy charge (Count One) and to four separate charges of money laundering (Counts Nine, Ten, Twelve, and

Fourteen); (2) that Martinez faced (a) on Count One, a minimum sentence of ten years' imprisonment, a maximum possible sentence of life, and a maximum possible fine of $4 million; and (b) on each of the money laundering charges, a maximum possible sentence of twenty years' imprisonment and a maximum possible fine of $500,000; (3) that, upon acceptance by the court of the guilty pleas tendered by Martinez, the Government would not oppose Martinez's motion to dismiss the three other money laundering counts against him (thereby reducing his exposure to prison by a total of sixty years and his exposure to fines by the sum of $1.5 million); and (4) that the Government would recommend to the district court a decrease in Martinez's offense level by 1 additional level pursuant to § 3E1.1(b)(2) of the Sentencing Guidelines, if Martinez qualified for a 2-point decrease in offense level under § 3E1.1(a), and if his offense level prior to the operation of § 3E1.1(a) was 16 or greater.[1]

At the Rule 11 plea proceeding conducted on November 29, 1999, Martinez acknowledged to the court that he had fully discussed with his counsel both the various charges against him and the terms of his plea agreement.[2] Martinez also acknowledged to the court that he understood the nature of the charges against him; he advised the court that he was not under the influence of alcohol or drugs; and he asserted that he was competent to plead.[3]

---

[1]Pursuant to § 3E1.1 of the Sentencing Guidelines, a defendant can receive a reduction in offense level for acceptance of responsibility. Under § 3E1.1(b), a defendant who has already qualified for the initial decrease in offense level under § 3E1.1(a) and who has committed a sufficiently severe crime will receive an additional decrease in offense level if it is determined that he gave certain types of assistance to the Government in the investigation or prosecution of his own misconduct.

[2]Plea proceedings are governed by the provisions of Rule 11 of the Federal Rules of Criminal Procedure.

[3]Rule 11(c) provides for the following "Advice to Defendant" in plea proceedings:

> Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

Pursuant to the provisions of Rule 11(c), the court informed Martinez that, on the conspiracy charge in Count One, he faced a mandatory minimum sentence of ten years' imprisonment, a potential maximum sentence of life, and the imposition of a fine of up to $4 million. He was further informed by the court that the maximum possible sentence on each of the money laundering charges was twenty years' imprisonment plus a fine of $500,000. Martinez acknowledged his understanding of the penalties he faced on the charges against him by virtue of his guilty pleas. The court also advised Martinez that it was not bound by the terms of his plea agreement with the Government, and that the final disposition of his case rested solely with the court. The court informed Martinez that the Indictment did not, in Count One, allege specific amounts of marijuana or cocaine, and it advised Martinez that the quantity of controlled substances involved in Count One would be determined at sentencing. Martinez acknowledged to the court, under oath, his understanding of all these matters.

Before concluding the Rule 11 proceeding, the court inquired whether the Government intended to present a factual basis for the guilty pleas. When the Government requested that the factual basis be withheld until sentencing because it was lengthy, the court acceded to its request.[4]

On March 3, 2000, the district court conducted Martinez's sentencing proceedings. In these proceedings, the Government made no objection to the Presentence Report ("PSR") of the Probation Officer, and Martinez did not contest the drug quantities determined in the

---

   (1)   the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term . . . .

[4]Rule 11(f) mandates that "[n]otwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." Because judgment is not entered until after sentencing, a court may defer the finding of a factual basis for the plea until that time. *United States v. Mitchell*, 104 F.3d 649, 651 (4th Cir. 1997).

PSR. The PSR determined that Martinez was accountable, under Count One, for 10,000 grams of cocaine hydrochloride and 317,520 grams of marijuana. Martinez also agreed to the criminal history upward departure recommended in the PSR. The district court found that an offense level of 35 and a criminal history category of IV applied to Martinez. The court then sentenced Martinez to 235 months' imprisonment (nineteen years and seven months) plus five years' supervised release on the conspiracy charge. He was also sentenced to serve three years' supervised release on each of the four money laundering charges, to run concurrently with the sentence imposed for conspiracy.[5] Pursuant to the plea agreement, the court granted Martinez's motion to dismiss the remaining charges against him, that is, Counts Eight, Eleven, and Thirteen of the Indictment.

Six days later, on March 9, 2000, Martinez filed in the district court a pro se motion, entitled "Motion to Withdraw Counsel," in which he indicated dissatisfaction with the work of his court-appointed lawyer, and by which he requested that a new lawyer be appointed for the appeal of his case. This pro se motion was deemed by the district court to constitute a notice of appeal.[6] In his motion, Martinez indicated an intention to challenge his sentence on the basis of mistakes in the PSR and in the calculation of his sentence under the Guidelines. Thereafter, on June 26, 2000, when the Supreme Court rendered its decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), Martinez was provided with an additional basis for appeal. In *Apprendi*, the Supreme Court held that any facts, except prior convictions, that increase the punishment for an offense beyond the maximum authorized in the statute criminalizing the conduct constitute "by definition 'elements' of a separate legal offense." *Apprendi*, 530 U.S. at 483

---

[5]The court, after determining that Martinez lacked the ability to pay, did not impose a fine on him.

[6]As a notice of appeal, Martinez's motion of March 9, 2000, was premature because the district court did not enter its judgment until March 16, 2000. Under Rule 4(b)(2) of the Federal Rules of Appellate Procedure, however, "[a] notice of appeal filed after the court announces a decision, sentence, or order — but before the entry of the judgment or order — is treated as filed on the date of and after the entry." In any event, a second notice of appeal was filed on Martinez's behalf on March 20, 2000.

n.10. Accordingly, such sentence-enhancing facts must be charged in the indictment, tried to the jury, and proven beyond a reasonable doubt. *Id.* at 490. Prior to *Apprendi*, numerous federal and state statutes, including 21 U.S.C. § 841, had been enacted with sentencing provisions that allowed a court to increase a defendant's sentence on the basis of facts (such as, in the case of § 841, drug quantity) found by the court by a preponderance of the evidence.

In the wake of *Apprendi*, which was decided prior to briefing in this case, Martinez altered the nature of his appeal.[7] He now asserts a total of five challenges to his convictions and sentence, four of which relate to his Rule 11 proceedings. His final contention is a constitutional challenge to 21 U.S.C. § 841. Martinez first asserts that the Rule 11 errors affected his decision to enter into his plea agreement, and he maintains that he would not have entered into the agreement if the district court had properly conducted those proceedings. Specifically, Martinez maintains that the district court committed Rule 11 error by (1) incorrectly informing him of his possible sentence on the conspiracy charge in Count One; (2) failing to properly advise him of the elements of the conspiracy charge; (3) failing to inform him that, if the sentencing recommendation of the Government was not accepted by the court, he would not have cause to withdraw his pleas; and (4) failing to establish a factual basis for his guilty pleas. Finally, Martinez contests his convictions and sentence on the basis that *Apprendi* rendered 21 U.S.C. § 841, the substantive statute forming the object of the Count One conspiracy, unconstitutional. We possess jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## II.

Before we address the merits of Martinez's contentions, we must consider a predicate procedural issue concerning the applicable standard of review. Because Martinez did not seek to withdraw his guilty plea in the district court, we review his alleged Rule 11 errors under

---

[7]Martinez is able to raise *Apprendi* issues on appeal because newly declared constitutional rules are applicable to criminal cases pending on direct appeal. *Griffith v. Kentucky*, 479 U.S. 314, 322-23 (1987). We have previously held that *Apprendi* constituted a newly declared constitutional rule. *United States v. Sanders*, 247 F.3d 139, 147 (4th Cir. 2001).

the standard applicable to forfeited error, i.e., assertions of error raised for the first time on appeal. The courts addressing this question disagree over whether such assertions are to be reviewed under a plain error standard or a harmless error standard. This question is one of first impression in our circuit, and we must resolve the question before we consider the substance of Martinez's Rule 11 claims.[8]

As a general proposition, of course, it is well established that forfeited error is reviewed under a plain error standard. *See* Fed. R. Crim. P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."); *United States v. Olano*, 507 U.S. 725, 731-32 (1993). Under plain error review, we may notice an error that was not preserved by timely objection only if the defendant can demonstrate (1) that an error occurred, (2) that it was plain error, and (3) that the error was material or affected the defendant's substantial rights. *Olano*, 507 U.S. at 732. Even when these three conditions are satisfied, we retain discretion whether to correct the error, which we should exercise only if the "error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.*

Under the provisions of Rule 11(h), errors in plea proceedings are normally evaluated under a harmless error standard. Fed. R. Crim. P. 11(h) ("Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."); *see United States v. DeFusco*, 949 F.2d 114, 117 (4th Cir. 1991). Under harmless error review, "[a]ny deviation from the requirements of Rule 11 is reversible unless the government demonstrates that it was 'harmless.'" *United States v. Lyons*, 53 F.3d 1321, 1322 n.1 (D.C. Cir. 1995). The harmless error analysis seemingly mandated by Rule 11(h) would, of course, be more favorable to Martinez than the plain error analysis of Rule 52(b). We must therefore determine whether Rule 11(h) supersedes Rule 52(b) in this situation, and we must ascertain

---

[8]In *United States v. Goins*, 51 F.3d 400, 402 (4th Cir. 1995), we applied harmless error review to asserted Rule 11 errors, where the defendant had unsuccessfully sought to withdraw his plea in district court. Because Goins made a motion to withdraw his guilty plea, his appeal did not involve forfeited error. Our decision in *Goins* therefore has no bearing on the standard of review to be applied here.

whether it mandates harmless error review for asserted errors in Rule 11 proceedings, even those a defendant failed to raise in the district court.

Several of our sister circuits have addressed this issue, and they disagree on the question of whether harmless error or plain error analysis governs. A majority, consisting of the First, Sixth, Seventh, and Eleventh Circuits, have concluded that the plain error analysis of Rule 52(b) represents the correct approach. *See United States v. Bejarno*, 249 F.3d 1304, 1306 (11th Cir. 2001); *United States v. Driver*, 242 F.3d 767, 769 (7th Cir. 2001); *United States v. Gandia-Maysonet*, 227 F.3d 1, 5 (1st Cir. 2000); *United States v. Bashara*, 27 F.3d 1174, 1178 (6th Cir. 1994). Two courts, however, the Ninth and the District of Columbia Circuits, have decided that "the Rule 11(h) 'harmless error' standard applies to all Rule 11 errors, regardless of whether they were ever raised before the district court." *United States v. Odedo*, 154 F.3d 937, 940 (9th Cir. 1998); *see also United States v. Vonn*, 224 F.3d 1152, 1155 (9th Cir. 2000), *cert. granted*, 121 S.Ct. 1185 (February 26, 2001); *Lyons*, 53 F.3d at 1322 n.1. As explained below, we join the majority and conclude that plain error analysis is the proper standard for review of forfeited error in the Rule 11 context.

The courts considering the question of the proper standard of review on Rule 11 issues have generally agreed that, prior to the promulgation of Rule 11(h) in 1983, there was some confusion over what constituted reversible error under Rule 11. The Supreme Court's decision in *McCarthy v. United States*, 394 U.S. 459 (1969), had led several courts to believe that, on direct appeal, all violations of Rule 11 constituted reversible error. *See Driver*, 242 F.3d at 770; *Gandia-Maysonet*, 227 F.3d at 5-6; *Odedo*, 154 F.3d at 940. Rule 11(h) was added to clarify that Rule 11 error should not be deemed prejudice per se. *Driver*, 242 F.3d at 770; *Gandia-Maysonet*, 227 F.3d at 5-6; *Odedo*, 154 F.3d at 939.

The courts addressing the standard of review question disagree, however, on whether Rule 11(h) merely incorporated the general standards of review established in Rule 52, or whether Rule 11(h) established a unique standard of review to be applied only in the Rule 11 context. The circuits supporting the proposition that plain error review

governs, in particular the First and the Seventh Circuits, stress that "Rule 11(h) was added by amendment for a narrow purpose," i.e., it was to demonstrate that Rule 52 applied to Rule 11 errors. *Gandia-Maysonet*, 227 F.3d at 6; *see also Driver*, 242 F.3d at 770. The courts that see harmless error review as the proper standard, in particular the Ninth Circuit, contend that the provisions of Rule 11(h) represent a rejection of "*McCarthy*'s extreme sanction of automatic reversal where technical violations occur." *Odedo*, 154 F.3d at 940. Both sides to this debate buttress their positions with references to structural considerations.

The First and Seventh Circuits contend, for example, that employing the traditional "'raise or waive' principle, here as with other kinds of error, serves obvious interests of fairness and judicial economy." *Gandia-Maysonet*, 227 F.3d at 5. They assert that a plain error standard, by inducing defendants to properly raise their contentions in district court, will enable "the district court to build the sort of record that is essential to understanding the effect of any noncompliance with Rule 11." *Driver*, 242 F.3d at 770. They also note that encouraging a defendant to move, in the first instance, to withdraw his plea in district court will "dispel uncertainty about whether the defendant *really* wants to withdraw his plea, give up the consideration received for the plea bargain . . . and go to trial." *Id.* (emphasis in original). In contrast, the Ninth Circuit stresses that the provisions of Rule 11 place obligations on the judge, not the defendant; it is the judge's duty to "comply with the requirements of the rule in order to assure that the plea is knowing and voluntary." *Odedo*, 154 F.3d at 940. The Ninth Circuit therefore concluded that Rule 11 does not require "the defendant to request the judge to make the inquiry or specify its form." *Id.* As such, the Ninth Circuit sees little reason for the proper standard of review to turn on whether a defendant made a motion to withdraw his plea.

After evaluating these competing positions, we see the plain error approach as most compelling. Significantly, the Advisory Committee Notes on Rule 11(h) suggest that Rule 11(h) should not be viewed as establishing a unique standard of review for Rule 11 errors. Indeed, the Advisory Committee began its discussion by observing that "[s]ubdivision (h) makes clear that the harmless error rule of Rule 52(a) is applicable to Rule 11." Advisory Comm. Notes to Fed. R.

Crim. P. 11(h), 1983 Amendment. The Committee further observed that the considerable disagreement over the effect of the Supreme Court's *McCarthy* decision occurred "[n]otwithstanding the declaration in Rule 52(a) that '[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.'" *Id.* These statements by the Committee, although not directly concerned with Rule 52(b), indicate that the Committee's goal in enacting 11(h) was in part to demonstrate that error under Rule 11 was no different from any other error, and that it was governed by the same standard of review. The Advisory Committee made no suggestion that Rule 11 errors should enjoy some special status, or that such errors are entitled to be reviewed under a unique standard. In fact, the Committee closed its commentary on Rule 11(h) with the following statement, rebutting the idea that Rule 11(h) somehow differentiated Ru1e 11 errors from other errors in criminal proceedings:

> It must also be emphasized that a harmless error provision has been added to Rule 11 because some courts have read *McCarthy* as meaning that the general harmless error provision in Rule 52(a) cannot be utilized with respect to Rule 11 proceedings. Thus, the addition of subdivision (h) should *not* be read as suggesting that Rule 52(a) does not apply in other circumstances because of the absence of a provision comparable to subdivision (h) attached to other rules.

*Id.* (emphasis in original). Thus, pursuant to the foregoing analysis, we are convinced that Rule 11(h) does not require a unique standard of review for Rule 11 errors.

A structural analysis of the two standards of review also supports our adoption of the plain error approach. The distinction suggested by the Ninth Circuit is premised on the concept that there is a difference, for standard of review purposes, between rules that bind a judge's conduct and rules that convey rights to a defendant. The Supreme Court, however, made no such distinction in *United States v. Olano*, 507 U.S. 725 (1993), holding that "[d]eviation from a legal rule is 'error' [under Rule 52(b)] unless the rule has been waived." *Olano*, 507 U.S. at 733-34. In fact, in *Olano* the Court specifically addressed a rule that imposed obligations on the judge, and it nevertheless held

that plain error analysis applied if the defendant failed to object at trial.[9] *Id.* at 737. Thus, the *Olano* Court indicated that if a legal rule is violated and the defendant fails to object at trial, the violation is subject to plain error review under Rule 52(b), regardless of its type. To the extent, therefore, the Ninth Circuit contends that Rule 11 errors are subject to a unique standard of review because Rule 11 places obligations on the judge, the *Olano* decision renders such a distinction untenable.

The considerations relied upon by the First and Seventh Circuits weigh heavily in favor of the plain error approach. As those courts observed, the interests of judicial economy are far better served by a plain error standard of review. *United States v. Driver*, 242 F.3d 767, 770 (7th Cir. 2001); *United States v. Gandia-Maysonet*, 227 F.3d 1, 5 (1st Cir. 2000). The Government bears the burden under a harmless error approach of showing that the error was not prejudicial, and in the context of plea proceedings, showing prejudice usually means demonstrating that a defendant would not have pleaded guilty absent the error. *Olano*, 507 U.S. at 734. Therefore, applying a harmless error standard to all Rule 11 errors would mean that the Government, in such cases, must demonstrate that a defendant would still have pleaded guilty absent the Rule 11 error. As the Seventh Circuit observed in *Driver*, the record will likely be sparse with respect to a defendant's knowledge and intentions if the defendant does not move to withdraw the plea, and the Government therefore would have substantial difficulty sustaining that burden, even when the error is truly harmless. *Driver*, 242 F.3d at 769. As such, if we mandate application of a harmless error standard for all Rule 11 errors, guilty pleas would be set aside more easily on appeal; thus, employing the harmless error approach would frustrate one of the central purposes of plea agreements — the increased efficiency of the judicial process.[10]

---

[9]The error at issue in *Olano* was the district court's failure to comply with the pre-1999 version of Rule 24(c) of the Federal Rules of Criminal Procedure, which mandated that "[a]n alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict."

[10]Perhaps the best argument in favor of the harmless error approach is that the title to Rule 11(h), "Harmless Error", implies that assertions of

Consistent with these textual and structural considerations, we are unable to recognize an exemption under Rule 11 to the Rule 52(b) analysis for forfeited error. As such, we will review Martinez's Rule 11 claims for plain error.

## III.

Having concluded that plain error is the appropriate standard, we will now apply it to Martinez's contentions, and we must determine whether any of his claims of Rule 11 error meet the exacting requirements of plain error review. Before doing so, however, we will first assess the impact of the *Apprendi* decision, and the impact of our related decisions in *United States v. Promise*, 255 F.3d 150 (4th Cir. 2001) (en banc), and *United States v. Cotton*, 261 F.3d 397 (4th Cir. 2001), on Rule 11 proceedings in this Circuit, particularly in the context of prosecutions under 21 U.S.C. § 841. In this regard, we observe that Martinez was not charged with any substantive drug offense, but only with conspiracy, under 21 U.S.C. § 846, to distribute controlled substances. Under the conspiracy statute, however, "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846. Because Martinez was indicted under § 846 for conspiring to violate § 841(a)(1), the provisions of the conspiracy's statutory object, § 841(a)(1), form the underlying basis of the conspiracy charge.

---

Rule 11 error should be treated differently from other contentions of error in federal criminal proceedings. This point, however, is undercut by the plain language of Rule 11(h), which provides that error "which does not affect substantial rights shall be disregarded." Fed. R. Crim. P. 11(h). A plain error standard of review by definition requires the reviewing court to disregard errors that do not affect substantial rights; thus, employing a plain error standard would not contravene the plain language of Rule 11(h). Put another way, the provisions of Rule 11(h) do not mandate a specific standard of review; instead, they fix a threshold level of review that must be satisfied.

A.

In its *Apprendi* decision in June of 2000, the Supreme Court concluded that Charles Apprendi's due process rights had been violated when, because the state trial court found by a preponderance of evidence that Apprendi had committed criminal activity with a racially biased purpose, he received a penalty exceeding the statutory maximum for the crime for which he had been convicted.[11] *Apprendi*, 530 U.S. at 497. The Court then held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Id.* at 490. The Court also concluded that "facts that expose a defendant to a punishment greater than that otherwise legally prescribed [are] by definition 'elements' of a separate legal offense." *Id.* at 483 n.10.

In our en banc *Promise* decision earlier this year, we had occasion to apply *Apprendi* to charges under 21 U.S.C. § 841. We observed that § 841(a) specifically "prohibits, inter alia, possession of controlled substances with the intent to distribute them," while § 841(b)(1) "sets forth various penalties that vary according to, inter alia, the quantity of the particular controlled substance at issue." *Promise*, 255 F.3d at 156 (Wilkins, J., joined by Widener, Williams, Michael, Motz, Traxler, and King, JJ.) (emphasis omitted). We further noted that "an individual who possesses with the intent to distribute an identifiable but unspecified quantity of [controlled substances]" faces a maximum sentence of twenty years, and that "[a] sentence

---

[11]Apprendi had pleaded guilty, in New Jersey state court, to two counts of second degree possession of a firearm for an unlawful purpose, and to one count of third degree possession of an antipersonnel bomb. *Apprendi*, 530 U.S. at 469-70. Under New Jersey law, second degree offenses have a maximum penalty of ten years' imprisonment. *Id.* at 468. Prior to *Apprendi*, however, the court could sentence a defendant to an extended term ranging from ten to twenty years if, under New Jersey's hate crimes law, it found by a preponderance of the evidence, that "[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." N.J. Stat. Ann. § 2C:44-3(e). The court, having made such a finding, sentenced Apprendi to twelve years on one of the two firearms counts, a term which exceeded the statutory maximum. *Apprendi*, 530 U.S. at 471.

exceeding 20 years may be imposed only upon an additional finding that the offense involved a specific threshold quantity of a schedule I or II controlled substance." *Id.* We therefore determined that "in order to authorize the imposition of a sentence exceeding the maximum allowable without a jury finding of a specific threshold drug quantity, the specific threshold quantity must be treated as an element of an aggravated drug trafficking offense." *Id.* Thus, *Promise* made clear that § 841 constitutes a multi-offense statute, with the baseline offense being drug distribution without a quantity finding, § 841(b)(1)(C), and with multiple aggravated offenses containing the additional element of a particular threshold quantity of drugs.

With the *Promise* decision having developed the framework for analyzing § 841 offenses, that framework was elaborated upon in *Cotton*. Judge Luttig, writing for the panel majority, noted that a court can neither try nor sentence a defendant for a crime not charged in the indictment. *Cotton*, 261 F.3d at 404. He further observed that, under *Apprendi*, an "indictment must contain an allegation of every fact which is *legally essential* to the punishment to be inflicted." *Id.* (quoting *Apprendi*, 530 U.S. at 490 n.15) (emphasis in original). An indictment, therefore, is "mandatory and jurisdictional"; a court may only take cognizance of charges specified with respect to every essential element in the indictment. *Id.* at 404-05. Judge Luttig thus concluded in *Cotton* that, in the event an indictment charged a violation of § 841 but did not specify quantity, a court possessed jurisdiction to try and sentence under the baseline drug trafficking offense only, that is, § 841(b)(1)(C), and it could not properly try and sentence a defendant for aggravated charges. *Id.*

In this case, as in *Promise* and *Cotton*, Count One charged Martinez with conspiring, under 21 U.S.C. § 846, to violate § 841(a)(1). Although Count One alleged that Martinez was charged with conspiracy to violate § 841(b)(1)(A), it contained no allegation of drug quantity. It therefore charged a conspiracy to violate § 841(b)(1)(C), and, under the reasoning of *Apprendi*, *Promise*, and *Cotton*, the district court possessed jurisdiction over Martinez for that crime only. Thus, because the court possessed jurisdiction over Martinez for the con-

spiracy to violate § 841(b)(1)(C), it could only conduct plea proceedings and sentence Martinez for that offense.[12]

### B.

We now review Martinez's contentions to determine whether error occurred as required by *United States v. Olano*, 507 U.S. 725 (1993). We therefore must determine (1) whether there was error; (2) whether it was plain; (3) whether it affected Martinez's substantial rights; and (4) whether, if the first three criteria are met, we should exercise our discretion to notice the error. *Olano*, 507 U.S. at 732.

We first examine whether Martinez's contentions of error are valid. Martinez alleges four separate errors occurred in his Rule 11 proceedings: (1) that the court incorrectly informed him of his potential sentence; (2) that the court failed to properly inform him of the elements of the conspiracy charge; (3) that the court failed to inform him that, if it rejected the Government's sentencing recommendation, he could not withdraw his guilty pleas; and (4) that the court did not determine the existence of a factual basis for his guilty pleas. We review each of these allegations in turn.

### 1.

Martinez's first contention, that the court incorrectly informed him

---

[12]It is clear, in the aftermath of *Apprendi*, *Promise*, and *Cotton*, that the parties and the court erroneously believed that Count One charged a conspiracy to violate § 841(b)(1)(A), a crime which carries a mandatory minimum sentence of ten years' imprisonment and a maximum possible sentence of life. The grand jury, however, charged the elements of a conspiracy to violate § 841(b)(1)(C), which carries no mandatory minimum sentence and a maximum possible sentence of twenty years' imprisonment, thereby conferring on the district court only the authority to hear and sentence under that offense. Martinez's sentence of 235 months' imprisonment, however, did not exceed the maximum authorized for conspiring to violate § 841(b)(1)(C), which is 240 months' imprisonment. Therefore, any such misapprehensions do not constitute error with respect to either Martinez's indictment or sentence. *United States v. Angle*, 254 F.3d 514, 518 (4th Cir. 2001) (en banc).

of the permissible sentence for the conspiracy charge in Count One, is, in light of the post-plea decision of the Court in *Apprendi*, a meritorious one. Under Rule 11(c)(1), the district court is obliged to inform the defendant of any mandatory minimum penalty and the maximum possible penalty provided by law for the charged offense. For conspiring under § 846 to violate § 841(b)(1)(C), we now know, in light of the trilogy of *Apprendi*, *Promise*, and *Cotton*, that Martinez faced no mandatory minimum sentence and that he faced a maximum potential sentence of twenty years' imprisonment. Consistent with the plea agreement, however, the district court incorrectly informed Martinez, prior to *Apprendi*, that he faced a mandatory minimum sentence of ten years' imprisonment and a maximum possible sentence of life. In these circumstances, this advice to Martinez on his potential sentence on Count One was incorrect. Therefore, error was committed in this respect.

2.

Martinez's second contention with respect to his Rule 11 plea proceeding, that he was not properly informed of the elements of the conspiracy charge, is without merit. Before accepting a guilty plea, "a trial court, through colloquy with the defendant, must inform the defendant of, and determine that he understands, the nature of the charge(s) to which the plea is offered." *United States v. DeFusco*, 949 F.2d 114, 116 (4th Cir. 1991) (citing Fed. R. Crim. P. 11(c)(1)). Although a judge has wide discretion in deciding how to ensure the defendant's understanding, it is essential that the defendant "receive notice of the true nature of the charge rather than a rote recitation of the elements of the offense." *Id.* at 117 (citing *Henderson v. Morgan*, 426 U.S. 637, 644 (1976)). In this case, the district court informed Martinez of each of the elements of the charge in Count One. There is no indication that Martinez was unaware that he was being charged with conspiring to distribute and possess controlled substances, or that he was unclear on what conduct constituted that offense. In fact, Martinez's assertion that he was not informed of the elements of conspiracy is based on the fact that the court failed to inform him that drug quantity constituted an element of the conspiracy offense. In this regard, he misses the point: drug quantity is not an element of a substantive § 841(b)(1)(C) offense, the object of the Count One conspir-

acy. Therefore, the court did not contravene Rule 11 in advising Martinez on the elements of the conspiracy charge.

3.

Martinez's third allegation of Rule 11 error, that he was not properly informed that the court's failure to accept the Government's sentencing recommendation would not constitute grounds to withdraw from the plea agreement, has merit. Under the provisions of Rule 11(e)(2), if a plea agreement involves a recommendation by the Government under Rule 11(e)(1)(B), the district court "*shall* advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw the plea." Fed. R. Crim. P. 11(e)(2) (emphasis added).[13] In this situation, although the court made clear to Martinez that it was not bound by the Government's recommendation, it did not specifically inform him that rejection of that recommendation by the court would not provide cause for Martinez to withdraw his pleas. Although this omission appears to be a minor departure from Rule 11(e)(2), we have held, as have other courts, that even this minimal noncompliance constitutes error. *United States v. Iaquinta*, 719 F.2d 83, 85 (4th Cir. 1983); *see also United States v. Livorsi*, 180 F.3d 76, 79 (2d Cir. 1999); *United States v. McCarthy*, 97 F.3d 1562, 1575 (8th Cir. 1996); *United States v. Diaz-Vargas*, 35 F.3d 1221, 1224 (7th Cir. 1994). In *Iaquinta*, Judge Ervin laid out the standard:

> While the district court need not recite verbatim the advice required by Rule 11(e)(2), it must substantially inform the defendant of and determine that the defendant understands the admonition contained therein. The district court here merely informed [the defendants] that it was not bound by any recommendations, and we decline to hold that such an instruction substantially informs a defendant that he or she

---

[13]A recommendation by the Government comes within the scope of Rule 11(e)(1)(B) when, pursuant to a plea agreement, the Government "recommend[s] or agree[s] not to oppose the defendant's request for a particular sentence or sentencing range, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor is or is not applicable to the case."

has no right to withdraw his or her plea if the district court does not accept the sentencing recommendation.

719 F.2d at 85. In this case, the court advised Martinez that it was "not bound by the [plea] agreement and the final disposition of this case is the sole responsibility of the Court." The court made no mention of Martinez's ability, or lack thereof, to withdraw his plea if the court rejected the Government's recommendation; in fact, the court did not specifically address the Government's recommendation at all. As such, the court failed to "substantially inform" Martinez of the requirements of Rule 11(e)(2), as required by *Iaquinta*, and this omission was erroneous.

4.

Martinez's final allegation of Rule 11 error, that the district court failed to ascertain that a factual basis existed for his guilty pleas, has no merit. Under Rule 11(f), "[n]otwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." Fed. R. Crim. P. 11(f). In essence, Rule 11(f) "ensures that the court make clear exactly what a defendant admits to, and whether those admissions are factually sufficient to constitute the alleged crime." *DeFusco*, 949 F.2d at 120. The court, however, is not required to make such a determination at the outset of the Rule 11 proceedings; it may defer its inquiry until sentencing. *United States v. Mitchell*, 104 F.3d 649, 651 (4th Cir. 1997). The court also need not establish the guilty plea's factual basis through the plea colloquy; the court "may conclude that a factual basis exists from anything that appears on the record." *DeFusco*, 949 F.2d at 120.

We review the court's finding of a factual basis for a guilty plea for abuse of discretion. We cannot find error so long as the district court could reasonably determine that there was a sufficient factual basis. *Mitchell*, 104 F.3d at 651. In this case, the inquiry into the factual basis for Martinez's guilty pleas was deferred until sentencing. The court at sentencing adopted the Presentence Report, which contained a litany of information supporting all the elements of the five charges to which Martinez pleaded guilty. *See United States v. Smith*, 160 F.3d 117, 121 (2d Cir. 1998) ("[The court] may look to answers

provided by counsel for the defense and government, the presentence report . . . so long as the factual basis is put on the record."); *United States v. Graves*, 106 F.3d 342, 345 (10th Cir. 1997) ("[W]e note that under Rule 11(f), a court may also satisfy the factual basis requirement by examining the presentence report."). As such, the district court possessed adequate support for concluding that there was a factual basis for Martinez's guilty pleas.

## C.

The district court accordingly erred in Martinez's Rule 11 proceedings in two respects, i.e., first, by incorrectly advising Martinez that he faced a mandatory minimum sentence of ten years and a maximum possible penalty of life imprisonment on Count One, and second, in failing to specifically advise Martinez that he would not have cause to withdraw his guilty pleas if the court rejected the Government's sentencing recommendation. We must next ascertain whether those errors were "plain." An error is plain under *Olano* if, at the time of appeal, "the settled law of the Supreme Court or this circuit establishes that an error has occurred." *United States v. Promise*, 255 F.3d 150, 160 (4th Cir. 2001) (en banc) (quoting *United States v. Neal*, 101 F.3d 993, 998 (4th Cir. 1996). In this situation, in light of the applicable Rule 11 legal principles and the decisions in *Apprendi*, *Promise*, *Cotton*, and *Iaquinta*, both these errors were plain.

## D.

We next consider the third prong of *Olano*, and we must decide whether Martinez has shown that the two errors affected his substantial rights. The Court in *Olano* observed that an error will affect a defendant's substantial rights if it is prejudicial, i.e., "[i]t must have affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734. As we noted previously, under Rule 52(b) and *Olano*, the defendant bears the burden of persuasion with respect to prejudice. *Id.* ("Rule 52(b) normally requires the same kind of inquiry [as Rule 52(a)], with one important difference: It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice."). Thus Martinez must demonstrate that, absent the Rule 11 errors, he would not have entered into his plea agreement with the Government. In attempting to demonstrate prejudice, Martinez is not

required to show that either error, standing alone, was prejudicial, although such a showing would satisfy his burden. Under the "cumulative error doctrine," Martinez can satisfy the requirements of the third prong of *Olano* if the combined effect of the two Rule 11 errors affected his substantial rights, even if individually neither error is sufficiently prejudicial. *See United States v. Munoz*, 150 F.3d 401, 418 (5th Cir. 1998); *United States v. Fernandez*, 145 F.3d 59, 66 (1st Cir. 1998); *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990) ("The cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error.").

Applying these legal principles, Martinez has failed to show that the two errors in his Rule 11 proceedings, either individually or cumulatively, affected his substantial rights. First of all, Martinez is unable to satisfy his burden with respect to the court's Rule 11(c)(1) error, i.e., its misstatement of the potential penalty on the conspiracy charge. Martinez contends that his incorrect conception of his potential sentence affected his substantial rights, because "[i]t is axiomatic that had [he] known that he faced a maximum sentence of 20 years rather than life imprisonment, he would [have] calculate[d] the risks and benefits of proceeding to trial differently." Appellant's Br. at 31. This argument, at first glance, may appear compelling, and if Martinez had only been charged and convicted with the single count of conspiracy under 21 U.S.C. § 846, he may have carried his burden of persuasion. The Indictment, however, alleged eight separate crimes against Martinez, and three of those crimes (Counts Eight, Eleven, and Thirteen) were dismissed at his sentencing pursuant to the terms of his plea agreement. Thus, Martinez's acceptance of the plea agreement was not entirely predicated on some reduction of his sentence on the conspiracy charge in Count One.

In addition, the eight separate criminal charges against Martinez meant that he faced a potential sentence far exceeding twenty years. In fact, each of the seven money laundering counts, under 18 U.S.C. § 1956(a)(1), carried a potential separate sentence of twenty years' imprisonment plus a fine of $500,000. Under the Indictment, Martinez therefore faced 140 years' imprisonment and $3.5 million in fines, independent of any penalty under Count One. Thus, even if he had properly perceived his penalty under Count One, Martinez faced

the choice of proceeding to trial on eight charges with a potential maximum penalty of 160 years' imprisonment and $7.5 million in fines, or accepting a plea agreement which reduced his potential exposure to prison by sixty years, reduced his financial exposure by $1.5 million, and required the Government to recommend that the court decrease his prison sentence. Thus, even if Martinez had been correctly advised of the permissible penalty on the conspiracy charge, there is no reason to believe that he would have sought to withdraw from the plea agreement. Martinez therefore fails to demonstrate that the district court's violation of Rule 11(c)(1) affected his substantial rights.

Martinez also fails to satisfy his burden under *Olano* with respect to the district court's violation of Rule 11(e)(2), i.e., its failure to advise Martinez that he could not withdraw his pleas if the district court rejected the Government's recommendation. Although he claims not to have known that a rejection of the Government's sentencing recommendation by the district court would not give him cause to withdraw his guilty pleas, Martinez was informed by the court, prior to entering his guilty pleas, that the court was not bound by the recommendation of the Government. Therefore, for Martinez to prevail on this point, he must demonstrate that he would not have entered into his plea agreement if he had known that the court's rejection of the Government's sentencing recommendation would not give him cause to withdraw. *See McCarthy*, 97 F.3d at 1575 (concluding that prejudice occurs if "appellant can present evidence that he would not have pleaded guilty had the district court given the warning"); *Diaz-Vargas*, 35 F.3d at 1224 ("The question of [prejudice] . . . depends on whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty."). Martinez, however, offers no support for that proposition, and the record fails to indicate that his guilty pleas were contingent on his being able to withdraw them if the Government's recommendation was rejected. As such, Martinez also fails to show that the Rule 11(e)(2) violation affected his substantial rights.[14]

---

[14]In addition, the district court accepted the Government's sentencing recommendation and gave Martinez a three-level adjustment for acceptance of responsibility. Thus, Martinez received everything that he could have expected to receive under the plea agreement.

Even when reviewed under the cumulative error doctrine, Martinez is unable to carry his burden of persuasion. The relevant inquiry under that doctrine is whether, absent both errors, Martinez would still have entered into the plea agreement. Although the cumulative impact of the errors exceeds their impact individually, Martinez is nevertheless unable to demonstrate that his substantial rights were affected. Even if Martinez had been properly advised by the court with respect to his potential sentence and his inability to withdraw from the plea agreement if the Government's recommendation were rejected, he still faced the choice of proceeding to trial on the charges against him — facing a potential sentence of 160 years' imprisonment and $7.5 million in fines — or accepting a plea agreement which reduced his exposure to prison by sixty years and his financial exposure by $1.5 million. Martinez offers no support, and none is found in the record, to suggest that he would have rejected the plea agreement under those circumstances. Therefore, even under the cumulative error doctrine, Martinez fails to satisfy his burden of persuasion under *Olano*.

Because Martinez is unable to satisfy the third prong of *Olano*, we need not reach *Olano*'s fourth requirement, i.e., whether this Court should exercise its discretion to notice plain error.[15]

### IV.

For the foregoing reasons, Martinez's challenges to his convictions and sentence are without merit, and we affirm.

*AFFIRMED*

---

[15]In addition to his allegations of Rule 11 error, Martinez asserts that 21 U.S.C. § 841 is unconstitutional in light of *Apprendi* because it removes facts that increase the prescribed range of penalties from the province of the jury, and it allows those facts to be established by a preponderance of the evidence. We review de novo a challenge to the constitutionality of a federal statute. *United States v. Buculei*, 262 F.3d 322, 327 (4th Cir. 2001). We have, however, already analyzed the effect of *Apprendi* on 21 U.S.C. § 841, and we have found § 841 to be constitutional. *United States v. McAllister*, No. 00-4423, 2001 WL 1387341 at *2-*3 (4th Cir. Nov. 8, 2001). Given our precedent, we need not further address Martinez's contention on this point.

LUTTIG, Circuit Judge, concurring:

In *United States* v. *Promise*, 255 F.3d 150, 168-86 (4th Cir. 2001) (en banc), I separately stated my views as to the proper interpretation of 21 U.S.C. § 841, and I will not repeat those views here. The court disagreed with those views, and its interpretation of section 841 is now binding. Because that interpretation is the law of the circuit I concur in the court's analysis of the errors allegedly committed by the district court. Additionally, but only because Martinez faced imprisonment for a term of 140 years even absent Count One, I also concur in the court's conclusion that Martinez has failed to carry his burden of showing that his substantial rights were affected by the district court's errors.