**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-4802**

UNITED STATES OF AMERICA,

       Plaintiff – Appellee,

v.

ALTAGRACIA ACOSTA SUAREZ, a/k/a Charo,

       Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Henry Coke Morgan, Jr., Senior District Judge.  (2:14-cr-00119-HCM-RJK-5)

Submitted:  December 21, 2017              Decided:  February 12, 2018

Before DUNCAN, KEENAN, and DIAZ, Circuit Judges.

Affirmed by unpublished opinion.  Judge Duncan wrote the opinion, in which Judge Keenan and Judge Diaz joined.

Andrew M. Stewart, DENNIS, STEWART, KRISCHER, & TERPAK, PLLC, Arlington, Virginia, for Appellant.  Dana J. Boente, United States Attorney, Alexandria, Virginia, Darryl J. Mitchell, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Defendant-Appellant Altagracia Acosta Suarez was charged with several drug-related offenses. On November 9, 2015, she pleaded guilty to one count of using communication facilities to cause, commit or facilitate a felony violation of the Controlled Substances Act, 21 U.S.C. § 843(b). The district court initially accepted her plea but, after questioning Acosta Suarez, it determined that she continued to deny criminal intent. The court thus rejected her plea. Next, Acosta Suarez pleaded guilty to distribution of cocaine, 21 U.S.C. § 841(a)(1), and aiding and abetting the distribution of cocaine, 18 U.S.C. § 2. Again, the district court accepted her plea and subsequently reversed course. This time, it rejected Acosta Suarez's plea because she did not completely admit her guilt and because her plea was based on a misunderstanding of the corresponding plea agreement. We affirm the district court's rejection of both pleas, holding that the court exercised its discretion soundly.

I.

In 2012, Acosta Suarez sold cocaine to her coworkers on several occasions. By May 2013, however, she seems to have stopped selling drugs directly. Instead, she became an intermediary between a local drug dealer, German Ponce, and one of her colleagues, Calvin Murphy. For the next year, Acosta Suarez regularly used her cell phone to schedule cocaine sales between Ponce and Murphy. In June 2014, officers from the Drug Enforcement Agency observed one of these sales and arrested Ponce. A few months later, they arrested Acosta Suarez.

2

During most of the relevant period, Acosta Suarez's husband was a confidential informant for the Immigration and Customs Enforcement Agency ("ICE"). Acosta Suarez was not.

## II.

On December 17, 2014, Acosta Suarez was charged with one count of conspiracy to distribute and possess with intent to distribute cocaine and two counts of using communication facilities--i.e., a cell phone--to facilitate felony violations of the Controlled Substances Act. On March 23, 2015, Acosta Suarez signed a plea agreement in which she agreed to plead guilty to one count of using communication facilities to help violate the Controlled Substances Act and the government agreed to drop the remaining charges.

The case was then assigned to a magistrate judge, who conducted Acosta Suarez's plea hearing. At the hearing, the magistrate judge accepted Acosta Suarez's guilty plea, but advised her that "[i]t remain[ed] for [the district court] to enter the finding of guilty and to impose sentence" and that the district court could defer taking such action until "the presentence report . . . is received and any factual disputes are resolved." J.A. 65.

On June 15, 2015, the U.S. Probation Office submitted Acosta Suarez's presentence report (the "PSR") to the district court. The PSR recommended that, in deciding what sentence to impose on Acosta Suarez, the court should consider the amount of cocaine that she sold to her coworkers and helped Ponce sell to Murphy. Two weeks later, Acosta Suarez objected to this recommendation, arguing that she should not

3

be "attributed with any drug weights" because she was "under the mistaken belief . . . that she was assisting her husband in gathering information for [federal] law enforcement officers" when she participated in these drug sales. J.A. 93 (internal quotation marks omitted). The government opposed this objection.

On July 21, 2015, the district court convened a sentencing hearing. At the beginning of the hearing, the court adjudged Acosta Suarez guilty. The court stated, however, that before it could proceed with sentencing it had to resolve Acosta Suarez's objection. Specifically, the court needed to determine whether Acosta Suarez disputed any of the criminal conduct attributed to her in the PSR because, if she did, she would not be eligible for an "acceptance of responsibility" reduction to her sentence.

To resolve this issue, the district court questioned Acosta Suarez under oath. During questioning, Acosta Suarez admitted that she had sold cocaine to her coworkers and scheduled drug deals for Ponce. However, Acosta Suarez explained that she participated in these illicit transactions because she "felt protected" by her husband's connection to ICE and because she wanted to help the federal agents collect incriminating evidence against Ponce. J.A. 111–12. Based on Acosta Suarez's testimony, the court found that she denied the criminal intent element of using communication facilities to help violate the Controlled Substances Act. Thus, the court reversed its acceptance of Acosta Suarez's guilty plea and scheduled the case for trial. The case was also reassigned to a different district judge.

On November 5, 2015, the government filed a criminal information, charging Acosta Suarez with distributing cocaine and aiding and abetting the distribution of

4

cocaine.  Four days later, Acosta Suarez waived her right to an indictment and agreed to plead guilty to the charges in the criminal information.  In exchange, the government agreed to dismiss all of the other charges pending against her.  The parties submitted a statement of facts in support of the plea agreement, which stated that, in August 2013, Acosta Suarez organized the sale of 3.5 grams of cocaine.

After a second plea hearing, the district court adjudged Acosta Suarez guilty of distributing cocaine.  The U.S. Probation Office then completed a new PSR for Acosta Suarez.  It recommended that the court should consider, as relevant criminal conduct, 657.28 grams of cocaine that Acosta Suarez helped Ponce distribute from 2013 to 2014.  Acosta Suarez filed an objection to the PSR, arguing that her sentence should be based solely on the 3.5 grams of cocaine contained in the statement of facts.  She also argued that she should not be held responsible for any additional drug amounts because she only sold cocaine under the belief that she was helping ICE collect evidence on Ponce.

On February 25, 2016, the district court convened a hearing to resolve Acosta Suarez's objection.  Acosta Suarez argued that her counsel advised her that, under the plea agreement, the government could not attribute more than 3.5 grams of cocaine to her at sentencing.  The government responded that the plea agreement did not limit Acosta Suarez's responsibility to 3.5 grams.  In light of this misunderstanding, the court found that "there was no meeting of the minds as to the meaning of the plea agreement."  J.A. 225.  The court also found that Acosta Suarez's contention that she was working for ICE when she scheduled the relevant drug sales indicated that she did not fully admit her

guilt, foreclosing a factual basis for her guilty plea. Thus, the court rejected the plea agreement and Acosta Suarez's guilty plea.

The following week, the court convened an arraignment during which Acosta Suarez pleaded "not guilty." J.A. 11. The case then proceeded to trial. After a bench trial, the court found Acosta Suarez guilty of one count of conspiracy to distribute and possess with intent to distribute cocaine, one count of aiding and abetting the distribution of cocaine, and one count of using communication facilities to cause, commit or facilitate a felony violation of the Controlled Substances Act. The court sentenced Acosta Suarez to three terms of forty-eight months in prison to run concurrently. This appeal followed.

III.

"A court may reject a plea in exercise of sound judicial discretion." *Santobello v. New York*, 404 U.S. 257, 262 (1971). Acosta Suarez argues that, once a court has accepted a guilty plea, Federal Rule of Criminal Procedure 11(b)(3) prohibits it from reversing course and rejecting that plea. According to Acosta Suarez, the court violated this prohibition and therefore abused its discretion by rejecting each of her guilty pleas after it had accepted them. Alternatively, Acosta Suarez argues that if a court rejects the plea agreement under which a guilty plea was entered, Rule 11(c)(5) requires the court to provide the defendant an opportunity to persist in his or her plea. Acosta Suarez contends that the district court did not provide her with this opportunity after it found that her second guilty plea was based on an invalid agreement.

6

## A.

Our discussion of Acosta Suarez's first argument proceeds in two parts. First, we reject her interpretation that Rule 11(b)(3) prohibits a court from rejecting a guilty plea if the court previously found that the plea had a factual basis. We then conclude that the district court exercised its discretion soundly when it rejected each of the pleas.

### i.

Acosta Suarez argues that, if a court initially finds that a guilty plea has a factual basis, Rule 11(b)(3) prohibits it from subsequently rejecting the plea, even though new developments in the case convince the court that the plea lacks a factual basis. We reject Acosta Suarez's interpretation of Rule 11(b)(3) because it lacks support in the rule's text and is contrary to its purpose.

To begin, Rule 11(b)(3) states, "Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). The rule creates a condition for entering judgment on a guilty plea. It does not, however, constrain the court's ability to reject a plea. In other words, when a court determines that a defendant's guilty plea has a factual basis, Rule 11(b)(3) *permits* the court to impose a sentence based on that plea, but it does not *require* the court to do so. Accordingly, the rule's text does not support Acosta Suarez's argument that once a court finds that a defendant's guilty plea has a factual basis, it must enter judgment on the plea regardless of new developments in the case. Indeed, the text weighs in the opposite direction,

suggesting that if new developments convince a court that a guilty plea lacks a factual basis, the condition for entering judgment on that plea has not been satisfied.

Second, Acosta Suarez's interpretation is in tension with the rule's primary objective, which is to "protect a defendant who [pleads guilty to a charge] . . . without realizing that his [or her] conduct does not actually fall within the charge." *McCarthy v. United States*, 394 U.S. 459, 467 (1969) (quoting Fed. R. Crim. P. 11, Notes of Advisory Committee on Criminal Rules). This objective is undermined by prohibiting a court from rejecting a guilty plea that it believes lacks a factual basis merely because it came to the opposite conclusion on a less complete record. On the other hand, Rule 11(b)(3)'s purpose is well-served by an interpretation that imposes on courts an ongoing duty to satisfy themselves that a guilty plea has a factual basis in light of any new information that arises as the case moves towards final judgment.

For these reasons, we are compelled to hold that Rule 11(b)(3) does not constrain a court's discretion to reject a guilty plea that lacks a factual basis, regardless of whether the court previously found that the plea had such a basis.

ii.

The district court did not abuse its discretion by rejecting Acosta Suarez's first guilty plea because it reasonably determined that the plea lacked a factual basis. Similarly, the court did not abuse its discretion by rejecting Acosta Suarez's second guilty plea because that plea was based on an incorrect understanding of the agreement under which it was entered and lacked a factual basis. We discuss each plea in turn.

8

We begin with Acosta Suarez's first plea. A district court exercises its discretion to reject a guilty plea soundly when it reasonably determines that the plea lacked a factual basis. *See United States v. Martinez*, 277 F.3d 517, 531 (4th Cir. 2002). A guilty plea lacks a factual basis if the facts admitted to by the defendant are insufficient to constitute the crime to which he or she is pleading guilty. *See McCarthy*, 394 U.S. at 467. Here, Acosta Suarez pleaded guilty to one count of using communication facilities to commit, cause or facilitate felony violations of the Controlled Substances Act. During the July 21, 2015, hearing, however, Acosta Suarez stated that she only scheduled the cocaine transactions because she believed that she was helping ICE collect evidence on Ponce and Murphy. In light of this testimony, the district court's conclusion that Acosta Suarez failed to admit criminal intent, and thus did not admit sufficient facts to constitute the crime to which she was pleading guilty, was reasonable. Accordingly, the court did not abuse its discretion by rejecting Acosta Suarez's plea.

We now consider Acosta Suarez's second guilty plea. A district court acts within its discretion by rejecting a plea when it determines that defendant entered the plea without sufficient awareness of the likely consequences. *See Brady v. United States*, 397 U.S. 742, 748 (1970) (holding that a guilty plea "must be [a] knowing, intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences"). On November 9, 2015, Acosta Suarez pleaded guilty to one count of distributing cocaine and aiding and abetting the distribution of cocaine. It is undisputed that Acosta Suarez's plea was based on her lawyer's mistaken advice that, under the relevant plea agreement, she would only be sentenced for the distribution of 3.5 grams of cocaine. During the

9

February 25, 2016, sentencing hearing, however, the government stated that it did not interpret the plea agreement as limiting Acosta Suarez's responsibility to 3.5 grams of cocaine and that it would seek a sentence that reflected her distribution of 657.28 grams instead. Given these statements, the district court reasonably concluded that Acosta Suarez pleaded guilty without sufficiently understanding the consequences of her plea.

Additionally, the district court found that Acosta Suarez's objection to the 657.28 grams of cocaine indicated that she continued to deny criminal intent because the objection was based on her assertion that she had only sold drugs to help ICE investigate Ponce. This finding reasonably supported the conclusion that her plea lacked a factual basis. Thus, the district court did not abuse its discretion by rejecting the second plea.

B.

Alternatively, Acosta Suarez contends that Rule 11(c)(5) requires a court to provide a defendant with the opportunity to persist in his or her guilty plea after the court determines that the plea was based on an invalid plea agreement. Acosta Suarez argues that the district court deprived her of that opportunity because it rejected her second guilty plea after it found that her corresponding plea agreement with the government was invalid. We find this argument unavailing because it misrepresents the relevant facts and misconstrues Rule 11(c)(5).

To begin, the district court afforded Acosta Suarez an opportunity to persist in her second guilty plea after finding that the underlying plea agreement was invalid. Although the court rejected Acosta Suarez's plea at the February 25, 2016, sentencing hearing, it

10

convened an arraignment the following week to allow her to enter a new plea. There is no indication in the record, and Acosta Suarez does not contend, that the court prevented her from entering a guilty plea during the arraignment.

Second, Acosta Suarez's argument misconstrues Rule 11(c)(5). While the rule may require a court to provide a defendant with an opportunity to persist in his or her guilty plea, it does not guarantee that the court will accept that plea. The rule states:

> **(5) Rejecting a Plea Agreement.** If the court rejects a plea agreement . . . , the court must do the following on the record and in open court (or, for good cause, in camera):
>
> (A) inform the parties that the court rejects the plea agreement;
>
> (B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and
>
> (C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

Fed. R. Crim. P. 11(c)(5). The rule creates safeguards to ensure that defendants have the opportunity to withdraw their guilty pleas if a district court determines that they will not be entitled to the benefits of their plea agreements with the government. But it does not constrain the court's separate authority to reject a plea because it determines, for example, that the defendant entered the plea based on erroneous assumptions about the consequences of doing so or that the plea lacks a factual basis. The decision to reject a plea under those circumstances is committed to the court's discretion, which the district court exercised soundly in this case when it rejected Acosta Suarez's second guilty plea.

11

IV.

In sum, we hold that the district court did not abuse its discretion by rejecting either of Acosta Suarez's guilty pleas.  Accordingly, the judgment of the district court is

*AFFIRMED.*