**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

              v.

JOHN DALEY STRASSINI, a/k/a John D.
Strassini, d/b/a Elite Home Builders,
d/b/a JDS Builders, Incorporated,
d/b/a John Daly Strothers,
              *Defendant-Appellant.*

No. 99-4654

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

              v.

JOHN DALEY STRASSINI, a/k/a John D.
Strassini, d/b/a Elite Home Builders,
d/b/a JDS Builders, Incorporated,
d/b/a John Daly Strothers,
              *Defendant-Appellant.*

No. 00-4206

Appeals from the United States District Court
for the Western District of North Carolina, at Charlotte.
Lacy H. Thornburg, District Judge.
(CR-97-54, CR-98-220)

Argued: October 31, 2002

Decided: March 11, 2003

Before NIEMEYER, WILLIAMS, and MICHAEL, Circuit Judges.

Affirmed by unpublished per curiam opinion. Judge Michael wrote a dissenting opinion.

## COUNSEL

**ARGUED:** Stephen Clayton Gordon, Assistant Federal Public Defender, Raleigh, North Carolina, for Appellant. Karen Elise Eady, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, Raleigh, North Carolina, for Appellant. Robert J. Conrad, United States Attorney, Brian Lee Whisler, Assistant United States Attorney, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

A federal grand jury in the Western District of North Carolina indicted John Daley Strassini with one count of mail fraud, one count of wire fraud, seven counts of money laundering, seventeen counts of bank fraud, twelve counts of making false statements to obtain loans, and one count of witness tampering. Pursuant to a written plea agreement, Strassini pleaded guilty to two counts of bank fraud, one count of wire fraud, and one count of money laundering. On appeal, Strassini challenges the validity of his conviction, arguing that his guilty plea was unknowing and involuntary because the district court failed to inform him that the Government must prove materiality for the bank and wire fraud charges. Because we find that the district court's error in failing to inform Strassini that materiality was an element of bank and wire fraud neither affected his substantial rights nor seriously affected the fairness, integrity, or public reputation of the judicial proceeding, we affirm Strassini's conviction and sentence.

I.

In 1995, Strassini began a construction business in Charlotte, North Carolina, doing business as JDS Builders and Elite Home Builders. To obtain financing to develop residential properties, Strassini made various false representations to local financial institutions, on which they relied in lending Strassini millions of dollars.

For example, between November 2, 1995, and June 6, 1996, Strassini falsely represented to NationsBank, on at least three applications, that (1) he owned $50,000 in real estate in Moore County, Tennessee; (2) he had total assets of approximately $243,200; (3) he had a net worth of approximately $220,400; (4) Elite Homes had assets totaling approximately $652,000; (5) he had a Bachelor of Science degree in Mechanical Engineering from Cleveland State University; and (6) his 1994 adjusted gross income was approximately $96,000. Based on these false representations, NationsBank approved three construction loans totaling approximately $1,117,100.

On October 25, 1996, Strassini deposited a $47,500 check into his business account at NationsBank that was drawn on his MBNA America Visa credit card, even though he knew that the credit card had a $7,500 limit. Strassini made several withdrawals from the account before the check was returned for insufficient funds.

On April 16, 1997, Strassini falsely submitted documentation to Common Point Mortgage of Charlotte, North Carolina, representing that (1) he had a monthly gross income of $30,000; (2) he had a net worth of $1,490,576; (3) Elite Homes had been in business for 22 years; and (4) Elite Homes was worth $937,684. In addition, Strassini submitted false Federal Tax Forms 1040 and 1120. Based on these false representations, Common Point approved Strassini's applications for mortgages of $480,200 and $438,800. Strassini submitted similar false information to secure other loans, the proceeds of which were deposited into his personal checking accounts.

Based on these and other false representations, the grand jury for the Western District of North Carolina charged Strassini with thirty-nine violations of federal law.[1] On December 4, 1998, Strassini filed

---

[1]On November 7, 1997, the grand jury indicted Strassini for eleven violations of 18 U.S.C.A. § 1344 (West 2000) (bank fraud) and six viola-

a written plea agreement wherein he pleaded guilty to two counts of bank fraud, one count of wire fraud, and one count of money laundering. In the plea agreement, Strassini stipulated that there was a factual basis for his guilty plea and that presentation of the factual basis was deferred until sentencing.

On December 7, 1998, Strassini appeared in court to enter his plea. The district court, pursuant to Fed. R. Crim. P. 11 (Rule 11), informed Strassini of the crimes to which he was pleading guilty by explaining the elements of bank fraud, wire fraud, and money laundering. The district court did not, however, discuss the element of materiality in either the bank or wire fraud charge because, at the time of Strassini's plea hearing, this circuit had not included the element of materiality in bank and wire fraud. *See United States v. Romer*, 148 F.3d 359, 370 (4th Cir. 1998) (reciting the elements of bank fraud without including materiality); *United States v. ReBrook*, 58 F.3d 961, 966 (4th Cir. 1995) (reciting the elements of wire fraud without including materiality). The district court accepted Strassini's plea, finding that it was "knowingly and voluntarily made and that [Strassini] underst[ood] the charges, potential penalties and consequences of the plea." (J.A. at 84.)

On June 10, 1999, after Strassini's plea hearing but before his sentencing hearing, the Supreme Court decided *Neder v. United States*, 527 U.S. 1 (1999). In *Neder*, the Court held that "materiality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes." *Id.* at 25.

On August 24, 1999, the district court held Strassini's sentencing hearing. Strassini again stipulated to the factual basis in the Presen-

---

tions of 18 U.S.C.A. § 1014 (West 2000) (making false statement to obtain loans). On October 7, 1998, the grand jury indicted Strassini for twenty-two additional violations of federal law, namely, one violation of 18 U.S.C.A. § 1341 (West 2000) (mail fraud), one violation of 18 U.S.C.A. § 1343 (West 2000) (wire fraud), seven violations of 18 U.S.C.A. §§ 1956(a)(1), 1956(h), 1957 (West 2000) (money laundering), six violations of 18 U.S.C.A. § 1344 (bank fraud), six violations of 18 U.S.C.A. § 1014 (making false statements to obtain loans), and one violation of 18 U.S.C.A. § 1512(c)(2) (West 2000) (witness tampering).

tence Report and the district court entered guilty verdicts on all four pleaded counts. Nothing was said regarding *Neder* or materiality from any party or the district court, and Strassini did not attempt to withdraw his plea. The district court sentenced Strassini to 72 months imprisonment on each count, to be served concurrently, and $212,383 in restitution to his victims. Strassini filed a timely notice of appeal to this court.

On appeal, Strassini challenges the validity of his guilty plea, arguing that the district court's omission of the element of materiality in his bank and wire fraud charges during the Rule 11 hearing makes his plea unknowing and involuntary, which, if true, would render the plea constitutionally invalid. Accordingly, Strassini argues that he should be permitted either to stand trial or plead anew.

## II.

"Under the provisions of Rule 11(h), errors in plea proceedings are normally evaluated under a harmless error standard." *United States v. Martinez*, 277 F.3d 517, 524 (4th Cir. 2002). Because Strassini failed to challenge or question his plea before the district court, however, we review only for plain error. *Id.* ("[I]t is well established that forfeited error is reviewed under a plain error standard."); *United States v. General*, 278 F.3d 389, 392 (4th Cir. 2002); *see also United States v. Vonn*, ___ U.S. ___, 122 S. Ct. 1043, 1046 (2002) (holding that plain error review is proper when a defendant fails to object to Rule 11 errors in the trial court). Accordingly, Strassini must establish that the alleged Rule 11 error meets the exacting requirements of plain error review, namely, (1) that the error occurred; (2) that the error was plain; (3) that the error affected his substantial rights; and (4) that we should exercise our discretion to notice the error because the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *General*, 278 F.3d at 393; *Martinez*, 277 F.3d at 524; *United States v. Stewart*, 256 F.3d 231, 252 (4th Cir. 2001). Because both parties agree that the district court erred and that the error was plain, we move to the third inquiry, whether the error affected Strassini's substantial rights.

## A.

An error affects a defendant's substantial rights "if it is prejudicial, i.e., '[i]t must have affected the outcome of the district court proceed-

ings.'" *Martinez*, 277 F.3d at 532 (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). To determine whether Strassini's substantial rights were affected, we must consider: (1) Strassini's knowledge, shown by the record, at the time he pleaded guilty; (2) what information would have been added to Strassini's knowledge had the district court complied with Rule 11; and (3) whether the proper information would have influenced Strassini's decision to plead guilty. *See United States v. Goins*, 51 F.3d 400, 402 (4th Cir. 1995) (stating that a "court must determine whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty" (internal quotation marks omitted)). Under plain error review, "the defendant bears the burden of persuasion with respect to prejudice." *Martinez*, 277 F.3d at 532 (citing *Olano*, 507 U.S. at 734); *see also Vonn*, 122 S. Ct. at 1046 ("We hold that a silent defendant has the burden to satisfy the plain error rule."). Accordingly, Strassini must demonstrate that he would not have entered into his plea agreement with the Government and would not have pleaded guilty in his plea hearing if the district court had complied with the requirements of Rule 11 and included the element of materiality in its recitation of the bank and wire fraud charges. *See Martinez*, 277 F.3d at 532 ("Martinez must demonstrate that, absent the Rule 11 errors, he would not have entered into his plea agreement with the Government.").

Strassini points to his own comments in his plea hearing that the harm to NationsBank was not "material" because NationsBank was never at a risk of loss and he repaid the loans as evidence that he would not have pleaded guilty had he known that materiality was an element of bank and wire fraud.[2] Viewed in isolation, these comments

---

[2]The dissent characterizes Strassini's statement as showing "Strassini thought that his false statements to the lending institution were not material because the statements, according to him, were not important to the institutions' decisions to make construction loans." *Post* at 12. To the contrary, Strassini stated that he thought he did not commit a crime "because [he] did not harm anybody." (J.A. at 82.) Strassini believed that he did not harm the lending institutions because "they were never at risk of loss," "I was never thirty days late in 18 months," "[t]hey were paid back in full," and "nobody that I did business with had a loss or was at risk of loss." (J.A. at 82.) Strassini's statement at the plea colloquy thus

might be persuasive if, as a defense to bank and wire fraud, Strassini could have asserted that he had repaid the financial institutions the money they lent him or that the financial institutions were never at a risk of loss. There are no such defenses, however, to bank and wire fraud. The element of materiality in the bank and wire fraud statutes requires only that the Government show that the false or fraudulent information was or could have been material to the financial institution's decision to grant the loan. *See Neder*, 527 U.S. at 22. Material information is that which "ha[s] a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed." *United States v. Gaudin*, 515 U.S. 506, 509 (1995) (internal quotation marks omitted). As discussed in part II.B below, Strassini admitted several times that he submitted false information to obtain loans. Accordingly, the false information was material.

In any event, Strassini's acceptance of the plea agreement was not entirely predicated on his belief that materiality was not an element. Strassini would have faced thirty-nine separate criminal charges if he had gone to trial, resulting in a potential sentence of 991 years imprisonment and $31.5 million in fines.[3] Under the plea agreement, in con-

---

shows that Strassini thought that his false statements to the lending institutions were not material because the lending institutions were not at risk of loss. Materiality, however, does not concern whether there was a risk of loss; it requires only that the lending institutions would reasonably rely on Strassini's false statements. *See Neder v. United States*, 527 U.S. 1, 22 n.5 (1999). As discussed infra note 4, Strassini's counsel's plea for leniency during sentencing neither demonstrates that his false statements were not material, nor can be substituted for Strassini's stated rationale at the plea colloquy.

[3]Five of the money laundering counts, pursuant to 18 U.S.C.A. § 1956(a)(1), each carried a potential separate sentence of twenty years' imprisonment plus a fine of $500,000. The other two money laundering counts, pursuant to 18 U.S.C.A. §§ 1956(h), 1957, carried potential sentences of thirty years and ten years imprisonment, respectively. The seventeen bank fraud counts, under 18 U.S.C.A. § 1344; the twelve false-statements-to-obtain-loans counts, under 18 U.S.C.A. § 1014; the mail fraud count, under 18 U.S.C.A. § 1341; and the wire fraud count, under

trast, Strassini only faced a potential sentence of 100 years imprisonment and about $5 million in fines and, importantly, the agreement also had stipulations that the Government would recommend downward departures if Strassini cooperated and accepted responsibility. Thus, although Strassini did not know that materiality was an element of bank and wire fraud at the time he pleaded guilty, if the district court had correctly advised Strassini regarding materiality, there is no reason to believe that Strassini would have sought to withdraw from the plea agreement. *Cf. Martinez*, 277 F.3d at 533 ("Martinez faced the choice of proceeding to trial on eight charges with a potential maximum penalty of 160 years' imprisonment and $7.5 million in fines, or accepting a plea which reduced his potential exposure to prison by sixty years, [and] reduced his financial exposure by $1.5 million . . . . Thus, even if Martinez had been correctly advised . . ., there is no reason to believe he would have sought to withdraw from the plea agreement."). Strassini, therefore, has failed to demonstrate that the district court's Rule 11 violation affected his substantial rights.

## B.

Moreover, even if Strassini could demonstrate that the error affected his substantial rights, the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings because there was "overwhelming" and "essentially uncontroverted" evidence of materiality. *Cf. United States v. Cotton*, ___ U.S. ___, 122 S. Ct. 1781, 1786-87 (2002) (failure by government to include necessary element in indictment); *Vonn*, 122 S. Ct. at 1046 (failure to object to Rule 11 error during plea hearing); *Johnson v. United States*,

---

18 U.S.C.A. § 1343, each carried a potential separate sentence of thirty years imprisonment plus a fine of $1,000,000. The witness tampering count, under 18 U.S.C.A. § 1512(c)(2), carried a potential one year sentence. Under the indictments, therefore, Strassini faced a potential sentence of 991 years imprisonment and $31.5 million in fines.

Moreoever, Strassini explicitly admitted that he was guilty of at least the twelve counts under 18 U.S.C.A. § 1014 in the Rule 11 hearing. These counts alone would amount to a potential sentence of 360 years imprisonment and $12 million in fines.

520 U.S. 461, 469-70 (1997) (failure by district court to submit necessary element of offense to jury). In this regard, Strassini has explicitly admitted that he submitted false, material information to financial institutions to obtain loans by stipulating to the factual basis of his crimes as found in the Presentence Report. The Presentence Report details at least eight separate instances where "Strassini submitted fraudulent loan information" to financial institutions and, "*[b]ased on* these false and fraudulent representations," the financial institutions lent Strassini money to which Strassini did not object. (J.A. at 233-36 (emphasis added).) Furthermore, Strassini admitted multiple times that he submitted false, material information to financial institutions to obtain loans. (*See*, *e.g.*, J.A. at 120 (Strassini's attorney stating, "[Strassini] has [never] denied, nor does he deny now submitting false information *in support of loan applications*" (emphasis added)), 145 (Strassini stating, "I submitted some false information *to obtain loans* to build houses." (emphasis added)).)[4] Because there is overwhelming

---

[4]Despite the multiple admissions in the Presentence Report and the record that Strassini made material, false statements to obtain loans, Strassini asserts on appeal that the following statement by his attorney during his sentencing hearing shows that the information he presented to the financial institutions was not material because the financial institutions were not lending based on what he told them:

> Our position is that [Strassini] did what [the Government] say[s], that he has misrepresented himself, he presented income tax returns that were inaccurate and he has played fast and loose with the truth on any number of occasions when he went to banks to borrow money, but that because of the nature of the construction business, they weren't lending based on what he told them. What they were lending on — these were construction draws. He told them I want to build a house, they said here's $10, you come back when you bought $10 worth of nails, we want to see the receipt. . . .

(J.A. at 107-08.) We reject this interpretation for three reasons.

First, Strassini's attorney made this statement in a request for leniency to show the district court that Strassini was not a regular criminal who went "into [a] bank and said give me $20,000, [ ] put the $20,000 in his pocket[,] and left town." (J.A. at 108.) In context, Strassini's attorney is simply alleging that the financial institutions *also* required that Strassini constantly prove that he was using the money for construction and that Strassini always provided that proof. A claim that the financial institution

and essentially uncontroverted evidence that Strassini submitted false, material information to obtain loans, even if the Rule 11 error affected Strassini's substantial rights and Strassini would not have pleaded guilty, we would not recognize the error.

III.

In conclusion, Strassini has presented no evidence to demonstrate that he would not have pleaded guilty had he known that the Government would have had to prove materiality in his bank and wire fraud charges. Based on this lack of evidence, and based on the staggering potential sentence that Strassini would have faced at trial, we conclude that Strassini has not shown that his substantial rights were violated by the exclusion of the element of materiality in the bank and wire fraud charges to which he pleaded guilty. Furthermore, because there is overwhelming and essentially uncontroverted evidence that Strassini submitted false, material information to obtain loans, we

---

*also* requires proof of proper use of its money for a loan does not indicate that it did not care about or require other evidence of loanworthiness, such as financial ability to repay the loan. To claim otherwise is ridiculous and simply not credible.

Second, Strassini's false statements were clearly material because they "have a natural tendency to influence, or [are] capable of influencing, the decision of the decisionmaking body to which it was addressed." *Gaudin*, 515 U.S. 506, 519 (1995) (internal quotation marks omitted); *see also Neder*, 527 U.S. at 22 n.5 (holding that materiality is what "the maker of the representation knows or has reason to know that its recipient *regards or is likely to regard . . .* as important" (emphasis added)). Thus, the proffered information only must have "the natural tendency to influence" a decisionmaker's decision, and proof that the banks actually relied on Strassini's submitted information is not necessarily required. *Cf. Neder*, 527 U.S. at 24-25.

Finally, one potentially ambiguous statement by counsel cannot undercut the overwhelming evidence and personal testimony by Strassini that he made false misrepresentations to support his loan applications and that the banks lent him money based on those false representations. Strassini has never denied making these false representations and has never stated that he would have claimed otherwise at trial.

decline to recognize the error because the error did not seriously affect the fairness, integrity, or public reputation of the judicial proceeding. For the foregoing reasons, Strassini's challenge to the validity of his conviction is without merit, and we affirm.

*AFFIRMED*

MICHAEL, Circuit Judge, dissenting:

I respectfully dissent. If John D. Strassini had known at his Rule 11 hearing that materiality was an element of the crimes of bank and wire fraud, he would not have pled guilty. This lack of knowledge, which came about through plain error, led Strassini to forego one of his substantial rights, the right to a jury trial. Allowing Strassini's ill-advised guilty plea to stand, particularly when he vigorously contests the government's claim of materiality, would seriously affect the "fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 736 (1993) (quotation omitted). Accordingly, I would vacate Strassini's conviction and allow him to enter a new plea.

## A.

The majority concludes that "although Strassini did not know materiality was an element of bank and wire fraud at the time he pleaded guilty, if the district court had correctly advised Strassini regarding materiality, there is no reason to believe that Strassini would have sought to withdraw from the plea agreement." *Ante* at 8. I disagree. The record supports Strassini's claim that had he been correctly advised of the elements of the crimes to which he pled guilty, he would have forgone the plea and exercised his right to a jury trial. *See United States v. Goins*, 51 F.3d 400, 402 (4th Cir. 1995) ("The court must determine whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty.") (quotation omitted). Strassini signed his plea agreement on December 4, 1998; his Rule 11 plea hearing was held three days later, on December 7, 1998, the date his trial was scheduled to start. J.A. 7. As of November 25, 1998, less than two weeks before the scheduled trial, both sides — Strassini and the government — were filing pre-trial motions in anticipation of a

trial. *Id.* At oral argument, defense counsel said that by December 4, when Strassini decided to plead guilty, subpoenas had already been issued to trial witnesses. Counsel for the government conceded that "strong preparation" had been made for the trial. Thus, the record establishes that until shortly before December 4, 1998, both sides were expecting a trial.

What happened, then, to lead Strassini to change his mind and plead guilty? The record provides a clear answer. Nine days before trial, Strassini's trial counsel informed him, incorrectly, that the government did not have to prove materiality in order to convict him of the bank and wire fraud charges. At the Rule 11 hearing, the court granted Strassini permission to make a statement. Strassini's statement, which explains his decision to plead guilty, bears directly on the question of whether he would have gone to trial but for his misunderstanding about the materiality element:

> I honestly up until nine days ago had the belief . . . I was not guilty of committing a crime . . . . Once [trial counsel] showed me the decision of the Supreme Court that showed the defense of the four parts, you know, of the crime, the materiality was removed. And that was my contention and defense that they were never material, and therefore, I didn't think it was a crime.

J.A. 82. (Strassini thought that his false statements to the lending institutions were not material because the statements, according to him, were not important to the institutions' decisions to make construction loans.) Strassini could not have been more clear in explaining his decision to accept a plea rather than exercise his right to a jury trial. Up until a few days before trial, he believed he was innocent of the bank and fraud charges because he did not think that the government had to prove materiality, though he knew the government could prove the other elements of the crimes. His decision to plead guilty thus rested upon his erroneous understanding that materiality was not an element of the bank and wire fraud offenses — a misunderstanding that went uncorrected by the district court or the government.

The majority suggests that Strassini misunderstood the meaning of materiality. According to the majority, Strassini's statements at the

plea hearing indicate that he "thought that his false statements to the lending institutions were not material because the lending institutions were not at risk of loss." *Ante* at 6 n.2. However, when Strassini's statements at the plea hearing are read in their entirety, they reveal that while Strassini did not believe that his false statements harmed the banks, he *also* believed that his false statements were not important to the banks' decision to lend him money. The Supreme Court case, *United States v. Wells*, 519 U.S. 482 (1997), that Strassini looked at, and mistakenly relied upon to conclude that the government did not have to prove materiality, begins its substantive discussion by defining materiality. *Wells* defines materiality as "hav[ing] a natural tendency to influence, or [being] capable of influencing, the decision of the decisionmaking body to which it was addressed." *Id.* at 489 (quotation omitted). Thus, at the time of his plea hearing, Strassini was aware of what materiality would mean if it applied in his case. And his defense that his false statements to the banks were not important to their decisions to approve his construction loans falls squarely within this correct understanding of materiality.

The majority further argues that because the government had overwhelming evidence of materiality, Strassini would not have proceeded to trial even if he had realized that the government needed to prove materiality. Strassini's actions do not support the majority's argument. Rather, his actions until right before the plea agreement and his statement at the Rule 11 hearing all indicate that, regardless of the strength of the government's case, he would not have pled guilty if he thought the government had to prove materiality. Again, Strassini did not call off the dogs and plead guilty until his lawyer told him, erroneously, that the government did not have to prove materiality.

The majority also emphasizes (1) that if Strassini had gone to trial he would have faced a potential sentence of 991 years imprisonment and up to $31.5 million in fines and (2) that under the plea agreement he faced only a potential sentence of 100 years imprisonment, about $5 million in fines, and the prospect that the government might recommend a downward departure. The majority then suggests that the prospect of a lighter sentence must have influenced Strassini's decision to plead guilty. I doubt, however, that a 40-year-old defendant, like Strassini, would see much difference between the risk of 100

years in prison and the risk of 991 years in prison. Even if the government has a strong case, a defendant facing this choice might well opt to exercise his right to a jury trial, betting on the long odds of acquittal. Every defendant has the right to a jury trial and that right exists regardless of the strength of the government's case. In this case, the record demonstrates that, wisely or not, Strassini would have exercised his right to a jury trial and would not have pled guilty if he had been correctly informed of the elements of the crimes alleged in the indictment. Accordingly, Strassini has demonstrated that the district court's plain error in failing to advise him of the elements of the crimes charged affected his substantial right to a jury trial.

B.

The majority concludes that even if Strassini could demonstrate that the Rule 11 error affected his substantial rights, "the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings because there was 'overwhelming' and 'essentially uncontroverted' evidence of materiality." *Ante* at 8. Again, I must disagree.

First, we cannot refuse to remedy plain error in the Rule 11 context just because there is evidence that might allow a finding of guilt. While a central part of our inquiry is whether the proceedings "resulted in a fair and reliable determination of guilt," *United States v. Cedelle*, 89 F.3d 181, 186 (4th Cir. 1996), the determination of whether a Rule 11 error should be recognized does not turn *solely* on a defendant's innocence. Rather, "[a]n error may 'seriously affect the fairness, integrity or public reputation of judicial proceedings' *independent of the defendant's innocence*." *Olano*, 507 U.S. at 736-37 (emphasis added).

Second, I disagree with the majority that there is overwhelming and uncontroverted evidence of materiality in this case. *Ante* at 8. A close reading of the indictment, plea agreement, and plea colloquy indicates that at no time prior to, or during, the Rule 11 inquiry did the government allege that the misrepresentations made by Strassini were material. J.A. 34-62, 67-70. To the extent there is evidence of materiality, it is found in the presentence report (PSR), which as the majority points out, states that "Strassini [in several instances] sub-

mitted fraudulent loan information" to financial institutions and "based on these false and fraudulent representations," the financial institutions lent Strassini money. J.A. 233-36. Yet defense counsel specifically objected to these statements in the PSR at the sentencing hearing. Counsel reiterated Strassini's persistent contention that the banks did not lend Strassini the money based on his misrepresentations but "because of the nature of the construction business, they weren't lending based on what he told them. What they were lending on — these were construction draws." J.A. 107. That is, Strassini told the banks that he wanted "to build a house, they said here's $10, you come back when you bought $10 worth of nails, we want to see the receipt. That's the way every one of these loans has proceeded." J.A. 107-08.

The majority says that these statements by defense counsel do not "undercut the overwhelming evidence" of materiality. *Ante* at 10 n.4. I cannot find this overwhelming evidence. For instance, with regard to loans obtained from NationsBank, the PSR states simply that Strassini provided false information to the bank about property he owned and academic degrees he earned. The PSR concludes that "[b]ased on these false and fraudulent representations . . . NationsBank approved two construction loans." J.A. 233. Nowhere, however, does the PSR recount specific facts to suggest that Strassini knew or should have known that the bank regarded or is likely to have regarded such information as important. *See Neder v. United States*, 527 U.S. 1, 22 n.5 (1999) (defining "materiality"). At most, the facts recounted in the PSR give rise to an inference of materiality, to which Strassini has a defense. He maintains that his false statements were not important to the banks' decisions to make construction loans. In addition, I do not agree with the majority's assertion that Strassini "admitted multiple times" that he submitted "false, *material* information" to banks to obtain loans. *Ante* at 9 (emphasis added). The majority points to defense counsel's statement that Strassini never denied, "nor does he deny now submitting false information in support of loan applications." J.A. 120. The majority also notes Strassini's statement that he "submitted some false information to obtain loans to build houses." J.A. 145. Strassini has never denied that he submitted false information to financial institutions in applying for loans. What he has denied is that the banks relied on this false information in making loans to him. His statements at his sentencing hearing indicate only that he

admits submitting false information. He has not admitted materiality. In short, the record does contain uncontradicted evidence that Strassini submitted false statements to his banks, but that evidence does not settle the question of materiality.

Finally, I must disagree with the majority's conclusion that we should not exercise our discretion to recognize the plain error at Strassini's Rule 11 hearing. I believe the "fairness, integrity, or reputation" of judicial proceedings is undermined when it is clear that the defendant would not have pled guilty but for plain error, and the defendant has a defense theory that he would have submitted to the jury absent the error. Indeed, we and other appellate courts have recognized plain error in similar circumstances.

In *United States v. Gandia-Maysonet*, 227 F.3d 1 (1st Cir. 2000), the First Circuit recognized a plain Rule 11 error and vacated the defendant's conviction under circumstances similar to this case. In *Gandia-Maysonet* the defendant pled guilty to one count of carjacking and one count of using a firearm in connection with that crime. The defendant later moved to set aside his plea on the grounds that he was not adequately informed of the scienter element of the carjacking offense at his Rule 11 hearing. *Id.* at 3. The First Circuit agreed that the defendant had not been adequately informed of the scienter element and concluded that although the facts proffered at the Rule 11 hearing would have provided an adequate basis for the plea, the factual basis for the scienter element was not overwhelming. *Id.* at 5. Accordingly, the First Circuit was "far from certain that [the defendant] would have agreed to plead guilty if he had fully understood what the government had to prove as to scienter." *Id.* at 3. The court noted that even though a jury *could have* inferred from the government's evidence that the defendant had the requisite intent, *id.* at 6, "[n]othing in the factual scenario described by the government or admitted by [the defendant] *specifically* referred to an intent on [the defendant's] part to cause death or serious bodily harm," *id.* at 4 (emphasis added). Because the evidence of the defendant's intent was not conclusive, the court recognized the Rule 11 error "because it seriously affected the guilty plea colloquy's fairness and integrity." *Id.* at 6. Thus, the court vacated the defendant's conviction and sentence.

In *United States v. David*, 83 F.3d 638 (4th Cir. 1996), we noticed a plain error in jury instructions and vacated the defendant's conviction for reasons that are applicable to this case. In *David* the defendant was convicted by a jury for making a false statement to the government. To establish such a violation, the government must prove that the defendant knowingly or willfully made a false statement to a government agency that was material to a matter within the jurisdiction of the agency. *Id.* at 640. In an application to renew a federal firearms license, the defendant falsely responded that he was not under indictment for a crime punishable by imprisonment for more than one year. At the time, however, he was under indictment for embezzlement, which carried a potential sentence of up to twenty years' imprisonment. At the defendant's trial the district court failed to instruct the jury on the element of materiality. Because the defendant did not object to the error at trial, we reviewed the issue under the plain error standard. In deciding whether to recognize the error, we considered that there was "no evidence in the record as to whether the district court determined that materiality had been proven beyond a reasonable doubt." *Id.* at 648. We also noted that even if the court could have determined that the false statement was material, "a jury could conceivably have concluded, as [the defendant] maintained at trial and continues to maintain on appeal, that materiality was not ultimately proven." *Id.*

In *David*, as in this case, the government's evidence created a strong inference of materiality, as surely an applicant for a firearms license would or should know that the government would regard a felony indictment as important. But in *David*, as here, the defendant had a defense theory. He maintained that he "would have been allowed to continue as a firearms dealer even had he responded truthfully to the indictment question." *Id.* Similarly, Strassini argues that the banks approved his construction loans based on the nature of the loans and not his false statements. Neither the indictment, nor the plea agreement, nor the Rule 11 hearing advanced facts to show that Strassini's misrepresentations were material. To the extent that the PSR contained such allegations, they were directly contested — on grounds of immateriality — by Strassini at the sentencing hearing. At no time did the district court determine that the government could prove materiality beyond a reasonable doubt. And, as was the case in *David*, "a jury could conceivably have concluded" that Strassini's defense theory,

although weak by the government's estimation, is valid. The problem is that a jury never had the opportunity to weigh the evidence because Strassini forfeited his right to a jury trial based on the district court's erroneous recitation of the elements of bank and wire fraud.

Accordingly, I would conclude, in line with *David*, that the particulars of this case, including "the fundamental nature of the error, leave us with little doubt that this is the kind of case in which our limited discretion under Rule 52(b) is appropriately exercised so as to preserve the fairness, integrity and reputation of the judicial process." *Id.* Strassini is entitled to have a jury decide whether his false statements were material to the banks' decisions to loan him money. *See United States v. Gaudin*, 515 U.S. 506, 522-23 (1995). I would thus vacate Strassini's conviction and allow him to plead anew.