# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,      )
     )
     )
v.      )     ID. No. 1703022008
     )
     )
RICHARD C. WHITE      )

Submitted: May 27, 2022
Decided: July 6, 2022

## MEMORANDUM OPINION AND ORDER

*Upon Defendant Richard C. White's Motion for Postconviction Relief*,
**DENIED**.

Diana A. Dunn, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, for the State of Delaware.

Mr. Richard C. White, *pro se*.

**WALLACE, J.**

Richard C. White is serving a sentence of life imprisonment following a guilty plea to a single count of Rape in the Second Degree.  In his present postconviction relief motion, Mr. White asks the Court to set aside its judgment of sentence and strike his plea.  He says the Court can and should do this because of a purported fatal deficiency in his plea colloquy.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[1]

In September of 2017, a grand jury indicted Mr. White for 11 counts of Rape in the Second Degree, one count of Continuous Sexual Abuse of a Child, one count of Dangerous Crime Against a Child, five counts of Sexual Exploitation of a Child, one count of Dealing in Child Pornography, and six counts of Possession of Child Pornography.[2]

These 25 felonies arose from a five-year course of sexual abuse that began when the victim, an acquaintance of one of Mr. White's children, was just twelve years old.  The victim described how their contact began in November 2012 when Mr. White—then a 36-year-old father of twin boys—started texting her.  Within a few months, Mr. White regularly picked up the prepubescent victim from her home

---

[1]    This recounting of the procedural and factual background of Mr. White's crimes and case are taken almost verbatim from the Court's earlier decision denying him a reduction of sentence under Criminal Rule 35(b). *State v. White*, 2019 WL 2142035, at *1-2 (Del. Super. Ct. May 15, 2019) ("*White II*").

[2]    Indictment, *State v. Richard C. White*, ID No. 1703022008 (Del. Super. Ct. Sept. 5, 2018) (D.I. 6).

or school, took her back to his house, and engaged in multiple acts of intercourse and sexual penetration with her. Mr. White would, at times, use still photography and cellphone video to record what became weekly sessions.

Eventually, when Mr. White lost his home, he would take his victim to parking lots, parks, and other secluded public places for sexual encounters. As the victim grew older and more resistant to Mr. White's actions, he would use manipulation or threats to continue having sex with her. The victim was terrified to tell anyone of Mr. White's exploitation. She explained that she felt trapped for the five years of abuse and simply did not know how to get out; every time she would mention stopping the sexual routine with Mr. White, he would threaten to tell people about their "relationship," or threaten either suicide or publication of the videos and photographs. The abuse ended in March 2017 when the victim finally confided to her softball coach what Mr. White had been doing.

Mr. White pleaded guilty to a single count of second-degree rape.[3] He did so in exchange for dismissal of all of the remaining charges and the State's favorable capped sentencing recommendation.[4] The guilty plea colloquy confirms that

---

[3] Plea Agreement and TIS Guilty Plea Form, *State v. Richard C. White*, ID No. 1703022008 (Del. Super. Ct. Jan. 16, 2018) (D.I. 15).

[4] *Id.* ("Pursuant to 11 Del. C. 4205A, [the] defendant is subject to a minimum mandatory 25 years of unsuspended Level 5 time. State will agree to cap recommendation at 30 25 years Level V.") (strikethrough in original plea agreement).

Mr. White's decision to enter his guilty plea was knowing, voluntary, and the product of an intelligent decision made with an adequate opportunity to discuss all aspects of his case with counsel.[5] Most importantly here, Mr. White confirmed both verbally and in writing that he was well-aware he faced a minimum mandatory term of 25 years imprisonment and the potential of a life sentence.[6]

Following a presentence investigation, Mr. White was sentenced.[7] The Court considered his counsel's presentation, his background, his expressions of remorse both before and at sentencing, the devastation visited on Mr. White's family by his acts, the many letters of familial support, and "every piece of sentencing information in this case."[8] The Court considered those many factors in light of the aggravators present and determined that Mr. White should serve the rest of his natural life in prison.[9] And the Court, as it usually does, articulated its reasons for such sentence

---

[5]  *See* Plea Colloquy Tr. at 9-10 (D.I. 28); *see also White v. State*, 2018 WL 6167326, at *2 (Del. Nov. 21, 2018) ("*White I*").

[6]  Plea Colloquy Tr. at 3, 7; Plea Agreement and TIS Guilty Plea Form at 2.

[7]  As oft-happens in this Court, the guilty plea was entered at Mr. White's final case review hearing before a calendar judge.  Once the presentence investigation was ordered, the matter was set before a different judge (in this case, the undersigned) at the first available sentencing calendar.

[8]  *See* Sent'g Hr'g Tr. at 4-9 (D.I. 27).

[9]  Sentencing Order, *State v. Richard C. White*, ID No. 1703022008 (Del. Super. Ct. May 18, 2018) (D.I. 21). The first 25 years of White's sentence is comprised of the minimum mandatory term of incarceration that had to be imposed and could not be suspended. *See* DEL. CODE ANN. tit. 11, §§ 772 and 4205A (2012) (providing that for rape second degree of a child, the Court, upon the State's application, "shall sentence a defendant . . . to not less than 25 years up to life imprisonment to be served at Level V").

both at the sentencing hearing and in its sentencing order.[10]

Mr. White docketed a timely direct appeal. After considering his counsel's Rule 26(c) briefing and the several arguments he himself raised, the Delaware Supreme Court affirmed Mr. White's conviction and sentence.[11]

While that appeal was pending, Mr. White had filed a timely *pro se* motion under Superior Court Criminal Rule 35(b) requesting reduction of the Level V term of his sentence.[12] Through that motion, Mr. White sought reduction of his term of imprisonment "to anything other than natural life" because: (a) he believed he had now been properly diagnosed and medicated for mental health issues; (b) he believed there were irregularities in the presentence investigation process; (c) he said was truly remorseful; (d) he believed he received "ineffective representation" when accepting his plea and at sentencing; (e) his family was experiencing great hardship; and (f) his rough comparison of what he said were comparable cases suggests he is serving a disproportionate sentence.[13] Once Mr. White's case was returned to this Court after direct appeal, his Rule 35 motion was considered on its merits.

---

[10] *See* DEL. CODE ANN. tit. 11, § 4202(n) (2012); DEL. SUPR. CT. ADMIN. DIR. 76 (1987). *See also White I*, 2018 WL 6167326, at *3 (noting the aggravators found and determining "there was no abuse of the Superior Court's discretion in sentencing [Mr.] White to life imprisonment").

[11] *White I*, 2018 WL 6167326, at *3.

[12] *See* Super. Ct. Crim. R. 35(b) (providing that, under certain conditions, the Court may reduce a sentence of imprisonment on an inmate's motion).

[13] Def.'s Rule 35(b) Mot. (D.I. 32); Def.'s Rule 35(b) Suppl. (D.I. 37).

Mr. White had an opportunity to then supplement his sentence-reduction plea and the State was given an opportunity to respond. The Court denied Mr. White's motion to reduce his sentence.[14]

Now pending is his Motion for Postconviction Relief filed under Superior Court Criminal Rule 61.

## II. MR. WHITE'S POSTCONVICTION CLAIM

Mr. White's single claim on postconviction is that his plea colloquy was somehow inadequate and, therefore, his guilty plea cannot stand.[15] Distilled further, Mr. White asserts that the Court omitted a *sine qua non* caution he believes was required by Superior Court Criminal Rule 11 in his case, thus representing a "structural error" invalidating his plea.[16] To be sure, where there is "a recommendation [by the attorney general] . . . for a *particular* sentence",[17] Rule 11 prescribes an advisory that "if the court does not accept the recommendation . . . the

---

[14] *White II*, 2019 WL 2142035, at *1-2, *4.

[15] Def.'s Mot. for Postconviction Relief, *State v. Richard C. White*, ID No. 1703022008 (Del. Super. Ct. Sept. 12, 2019) (D.I. 40) (Hereinafter "Def.'s Rule 61 Mot."); *see also* Postconviction Relief Hr'g Tr. at 3, *State v. Richard C. White*, ID No. 1703022008 (Del. Super. Ct. Feb. 23, 2022) (D.I. 58) (Hereinafter "PCR Hr'g Tr.").

[16] PCR Hr'g Tr. at 3-4 (citing the provisions of this Court's Criminal Rules 11(e)(1)(B) and (e)(2) regarding certain negotiated sentencing recommendations); *id.* at 5 ("What I'm claiming is something that is a structural error. It's black and white. It's either not there or there.").

[17] Super. Ct. Crim. R. 11(e)(1)(B) (emphasis added).

defendant nevertheless has no right to withdraw the plea."[18]  Now fixated on an absence of such an explicit warning in the record of his plea colloquy,[19] Mr. White contends this is a sufficient basis for striking his plea and starting over from square one.[20]

## III. APPLICATION OF RULE 61's PROCEDURAL BARS

Before the Court can consider the substance of any postconviction claim, it must first address Criminal Rule 61's procedural requirements.[21]  The procedural bars in Rule 61 are timeliness, repetitiveness, procedural default, and former adjudication.[22]

Here, Mr. White's postconviction motion was filed less than a year after his judgment of conviction became final.  So, it's timely.  This is also Mr. White's first motion for postconviction relief.  So, it's not repetitive.  But the procedural default and former adjudication hurdles bear further discussion.

---

[18]  PCR Hr'g Tr. at 4-5; *see also* Super. Ct. Crim. R. 11(e)(2) (articulating the required disclosure for stipulated-recommendation plea proceedings).

[19]  PCR Hr'g Tr. at 4 ("Nowhere on the transcript does it say that the Court is not bound by this plea agreement, nor does it say that I cannot withdraw my plea at any time if it's not accepted.").

[20]  *Id.* at 6-7.

[21]  *Maxion v. State*, 686 A.2d 148, 150 (Del. 1996); *State v. Jones*, 2002 WL 31028584, at *2 (Del. Super. Ct. Sept. 10, 2002).

[22]  *State v. Taylor*, 2017 WL 5054262, at *2 (Del. Super. Ct. Oct. 23, 2017). If any of these bars apply, then the inmate must show entitlement to relief under Rule 61(i)(5). *Id.*

## IV. MR. WHITE'S SOLE POSTCONVICTION CLAIM IS RESOLVED VIA APPLICATION OF RULE 61'S PROCEDURAL BARS

One striking anomaly in this postconviction proceeding—what Mr. White *is not* arguing. Notwithstanding certain allusions to purported deficiencies by counsel in earlier filings,[23] Mr. White now has made it clear both in writing[24] and when directly questioned that he *is not* leveling a charge of ineffective assistance of counsel:

> THE COURT:     So you're not claiming [trial/plea or appellate counsel] was ineffective either as far as the plea or on appeal?
>
> MR. WHITE:      Negative.[25]

So Mr. White raises no ineffective assistance of counsel claim but instead urges the Court to simply apply the standards that otherwise govern its criminal rules— including Superior Court Criminal Rule 61's bars.[26]

---

[23]  *E.g.*, *White I*, 2018 WL 6167326, at *1 (When ruling on his direct appeal, our Supreme Court noted one of Mr. White's points for consideration was: "Seventh, [Mr. White] contends that trial counsel was ineffective for failing to inform him that a life sentence was really possible . . . ."); Def.'s Rule 35(b) Mot. at 2 (setting forth "Ground three: Effective Representation"); Def.'s Rule 35(b) Suppl. at 3-5 (setting forth "Ground three update: Ineffective Representation").

[24]  *E.g.*, Def.'s 1st Rule 61 Suppl. at 1 (D.I. 44) (Defendant objecting to expansion of Rule 61 record with trial/plea counsel's affidavit: "This is a not the adversarial circumstance, [Rule 61(g)] is for. The claim ineffective was NOT made.") (emphasis in original); Counsel's Rule 61(g) Affidavit, Ex. A at 12 (D.I. 47) (Mr. White's letter to trial/plea counsel asking that he include certain materials with his Rule 61(g) affidavit and explaining: "I never filed an ineffective assistance claim . . . . I do not and did not blame you. I blame the court.").

[25]  PCR Hr'g Tr. at 4-6 (Mr. White clarifying that he is raising no ineffective assistance claims).

[26]  *See id.* at 6:

## A. PREVIOUS ADJUDICATION FINDING MR. WHITE ENTERED HIS GUILTY PLEA KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY.

Under Rule 61(i)(4): "[a]ny ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred."[27]

Mr. White asserts one claim in his Rule 61 motion: that his plea cannot stand because the Court did not expressly warn him that it was not bound by the State's sentencing recommendation and that he would have no cause to withdraw his guilty plea if that recommendation were rejected.[28] The State contends that Rule 61(i)(4) procedurally bars this claim because it was, in essence, formerly adjudicated on direct appeal.[29] Mr. White counters in few words—"involuntary plea was not considered a ground on his direct appeal."[30] So the Court must resolve the

---

| THE COURT: | And it does make a difference in the way that the Court has to address things under Rule 61. So you're asking the Court to apply the rules as if this is not an ineffective assistance claim; just the rules and bars that otherwise apply. |
| --- | --- |
| MR. WHITE: | Correct. Absolutely. |

[27] Super. Ct. Crim. R. 61(i)(4); *see also Floyd v. State*, 1995 WL 622408, at *2 (Del. 1995).

[28] Def.'s 2nd Rule 61 Suppl. at 1 (D.I. 45).

[29] State's Rule 61 Resp. at 4–6 (D.I. 50).

[30] Def.'s Rule 61 Reply Br. at 1 (D.I. 53).

applicability of this (and any other) Rule 61 procedural bar.[31]

During his direct appeal to the Delaware Supreme Court, Mr. White was represented by the same attorney he had during the plea proceedings here. And during his appeal, Mr. White's counsel filed a brief and motion to withdraw under Supreme Court Rule 26(c). Counsel averred that, based upon a complete and careful examination of the record, there were no arguably appealable issues to raise on direct appeal. In response, Mr. White exercised his right to supplement his counsel's presentation and penned eight issues for the Supreme Court's consideration—some of which, at their core, required the Court to determine whether he entered his guilty plea knowingly, intelligently, and voluntarily.[32]

"Justice does not require that an issue that has been previously considered and rejected be revisited simply because the claim is refined or restated."[33] In effect, the Supreme Court has already addressed arguments questioning the validity of Mr. White's plea that are so closely related to that made here as to trigger

---

[31] *Davenport v. State*, 2019 WL 2513771, at \*2 (Del. June 17, 2019) ("Postconviction relief is a collateral remedy that provides an avenue to challenge a conviction that has otherwise become final. It is not a substitute for a direct appeal. Accordingly, Rule 61's procedural bars must be considered before the merits of any claim.") (internal citations omitted); *Ayers v. State*, 802 A.2d 278, 281 (Del. 2002) ("Before examining the merits of any Motion for Postconviction Relief, our courts must first apply the rules governing the procedural requirements for relief set forth in Rule 61. Except in exceedingly limited circumstances, the failure to meet those requirements bars any further consideration of the petitioner's claims.").

[32] *White I*, 2018 WL 6167326, at \*1-2.

[33] *Riley v. State*, 585 A.2d 719, 721 (Del. 1990); *State v. Madison*, 2018 WL 1935966, at \*4-5 (Del. Super. Ct. Apr. 11, 2018), *aff'd*, 2018 WL 6528488 (Del. Dec. 11, 2018).

Rule 61(i)(4)'s former adjudication bar.

At times when assessing a certain postconviction claim a court might find its underlying issues to have been fully addressed in an earlier adjudication of a related claim in the case and "conclude that the interests of justice would not be served by any further consideration of them."[34] No doubt, a postconviction court is often urged by a Rule 61 petitioner to address a claim close but not identical to one that was substantively resolved—*i.e.*, formerly adjudicated—on direct appeal.[35] And, in the right instance, such a latter postconviction claim might properly be deemed procedurally barred because "a defendant is not entitled to have a court re-examine an issue that has been previously resolved."[36]

Simply put, there is no requirement that the prior and current claims be identical in order for the Rule 61(i)(4) procedural bar to apply. That said, "the mere fact that a postconviction relief claim might bear some resemblance to a formerly

---

[34] *Riley*, 585 A.2d at 721.

[35] *See Skinner v. State*, 607 A.2d 1170, 1172 (Del. 1992).

[36] *Id.*; *See State v. Smith*, 1994 WL 713969, at *2 (Del. Super. Ct. Nov. 15, 1994) *aff'd*, 751 A.2d 878 (Del. 2000) (finding that Rule 61(i)(4) applied to an ineffective claim that movant had "couched . . . in slightly different terms" than he had in his previous postconviction motion); *Garvey v. State*, 2009 WL 2882873, at *1 (Del. Sept. 10, 2009) (finding a claim procedurally barred by Rule 61(i)(4) because the court "disagree[d] with [movant]'s contention that his current claim [wa]s sufficiently distinguishable from [a] previous claim to warrant consideration in this [postconviction] proceeding" as postconviction movant "merely recast his previously-rejected claim as an attack on his indictment.").

adjudicated claim does not trigger Rule 61 (i)(4)'s bar."[37] "Instead, the relevant determination is whether the underlying issue of a claim has already been decided."[38]

Here, Mr. White's inadequate plea colloquy claim was substantively examined and resolved on direct appeal.[39] Thus, Mr. White's current complaint regarding a technical deficiency in that colloquy might well be deemed procedurally barred under Rule 61(i)(4). But if there is sufficient daylight between his direct appeal and current postconviction claims attacking his plea, Mr. While must then overcome Rule 61's procedural default bar.

### B. MR. WHITE'S NO-WITHDRAWAL-WARNING CLAIM—IF TRULY A GROUND FOR RELIEF NOT PREVIOUSLY ASSERTED—IS BARRED DUE TO HIS DEFAULT.

To reiterate, Mr. White says his request for relief is a precise claim that a specific caution is missing from his plea colloquy so his plea must therefore be stricken and he must be allowed to start anew.[40] And, he says, that precise claim "was not considered a ground on his direct appeal."[41] If so, Mr. White's argument

---

[37]  *Green v. State,* 283 A.3d 160, 176 (Del. 2020).

[38]  *Madison*, 2018 WL 1935966, at *3-5.

[39]  *White I*, 2018 WL 6167326, at *2 (detailing the Court's examination of Mr. White's plea colloquy and "conclud[ing] that [Mr.] White's [was a] knowing, intelligent, and voluntary guilty plea").

[40]  PCR Hr'g Tr. at 6-7; Def.'s Rule 61 Reply Br. at 4 (D.I. 53).

[41]  Def.'s Rule 61 Reply Br. at 1.

is subject to the Rule 61(i)(3) bar because he didn't raise it on direct appeal.[42]

Under Rule 61(i)(3): "[a]ny ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this Court, is thereafter barred, unless the movant shows (A) Cause for relief from the procedural default and (B) Prejudice from violation of the movant's rights."[43] Both cause and prejudice must be established for the Court to consider a procedurally defaulted claim.[44] Mr. White has established neither. And so, his inadequate-plea-colloquy claim is barred by Rule 61(i)(3).

1. *No cause for Mr. White's failure to raise his Rule 11(e)(2) claim earlier.*

Since Mr. White did not raise this Rule 11(e)(2) issue during the proceedings leading to his conviction and sentence or on direct appeal, he must set forth sufficient cause for failing to do so. But Mr. White does nothing to specifically address Rule 61(i)(3)'s cause requirement.

---

[42] *Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996); *State v. Nelson*, 2004 WL 1658495, at *1 (Del. Super. Ct. July 22, 2004).

[43] Super. Ct. Crim. R. 61(i)(3). Without doubt, none the of the recognized exceptions to Rule 61(i)(3)'s bar help Mr. White here. *See* Super. Ct. Crim. R. 61(i)(5) (incorporating the pleading requirements of Rule 61(d)(2) and allowing that 61(i)(3)'s bar to relief cannot be applied to a claim that the court lacked jurisdiction or to any claim that either: (i) pleads with particularity that new evidence exists that creates a strong inference that the inmate is actually innocent in fact of the acts underlying the charges of which he was convicted; *or* (ii) pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States or Delaware Supreme Courts, applies to the inmate's case and renders his conviction invalid).

[44] *State v. Loper*, 2016 WL 3621547, at *4 (Del. Super. Ct. June 27, 2016).

To show cause, a Rule 61 movant must "allege more than the fact that a claim was not raised earlier in the process";[45] he must show "some external impediment" prevented him from constructing or raising the claim.[46] A movant's bald suggestion that he wasn't fully aware of an alleged rules-based, statutory, or constitutional violation won't suffice. Indeed, "it has previously been held that lack of knowledge as to one's rights does not constitute 'cause'" under 61(i)(3).[47]

According to Mr. White, he knew of the basis for this precise claim at his sentencing hearing.[48] The specific Rule 11 language Mr. White invokes here had been part of that rule for nearly three decades when he entered his plea and was sentenced. When on direct appeal, Mr. White personally submitted eight different claims for the Delaware Supreme Court to consider under its Rule 26. So the basis for the precise Rule 11(e)(2) claim he now makes was both evident and available to him during the first round of proceedings in this Court and on direct appeal. And in

---

[45] *State v. Stelljes*, 2018 WL 6264707, at *3 (Del. Super. Ct. Nov. 28, 2018); *State v. Davis*, 2000 WL 305477, at *1 (Del. Super. Ct. Feb. 24, 2000) ("A showing of cause is not satisfied by showing merely that a claim was not timely raised").

[46] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990) (citing *Murray v. Carrier*, 477 U.S. 478, 492 (1986)); *State v. Cuff*, 2010 WL 1854134, at *2 (Del. Super. Ct. Apr. 28, 2010).

[47] *Cuff*, 2010 WL 1854134, at *2 (citing *State v. Vasquez*, 2001 WL 209867, at *1 (Del. Super. Ct. Jan. 31, 2001)).

[48] Counsel's Rule 61(g) Affidavit, Ex. A at 12 ("I knew something was wrong when the Judge, at sentencing, before sentencing me to life, said 'As you were told at the time of accepting this plea the court's not bound by the recommendation.'"); Sent'g Hr'g Tr. at 8 (". . . but as you were told at the time of your plea, that is a recommendation, and the Court has to exercise its own independent sentencing judgment.").

-14-

view of his prolix Rule 26 submission on direct appeal, he clearly had the opportunity to make it previously. Given all that, the Court can discern no external impediment that was cause for Mr. White's default.

And so, Mr. White's failure to show cause for his procedural default alone dooms his present attempt to have his guilty plea set aside.[49] But any attempt to demonstrate the required prejudice would be equally unavailing.

### 2. *Mr. White's complaint of a technical violation of Rule 11 doesn't demonstrate the prejudice needed to strike his guilty plea.*

Citing only a portion of Rule 11 and a few older federal cases, Mr. White's complaint is straightforward—(a) his was the type of plea agreement that triggered a Rule 11(e)(2) caution; (b) the Court gave no such express warning during his plea colloquy; (c) the Court did reject the State's recommendation at his sentencing; so (d) he should now be able to have his rape conviction and sentence vacated and either renegotiate a plea or proceed to trial.

Prejudice in this instance requires showing of a "substantial likelihood" that had Mr. White raised his now-precise issue on direct appeal the outcome thereof would have been different.[50] Because, to establish prejudice under Rule 61(i)(3),

---

[49] *Shelton v. State*, 744 A.2d 465, 478 (Del. 2000) ("Because he has failed to show cause for his procedural default, this Court need not consider whether [movant] can demonstrate prejudice."); *Vasquez*, 2001 WL 209867, at *1 ("Since the Court has concluded that Defendant has failed to establish sufficient cause under Rule 61(i)(3)(A), it need not address the issue of prejudice under Subsection (i)(3)(B).").

[50] *Stelljes*, 2018 WL 6264707, at *3 (citing *Flamer v. State*, 585 A.2d 736, 748 (Del. 1990)).

one must show actual prejudice resulting from the error alleged.[51]

Mr. White's filings suggest that his claim should be wholly controlled by certain federal cases interpreting Federal Rule of Criminal Procedure 11. True, both the wording and development of our Rule 11 have generally tracked its federal analogue. But "interpretation of that federal rule by federal courts is persuasive, although not necessarily binding upon" a Delaware state court.[52] And while Mr. White has fished out a couple of seemingly favorable cases, he's ignored important Rule 11 language—both federal and state—and a large school of interpretative caselaw—both federal and state. The Court cannot.

First, Mr. White is incorrect that the against-the-letter Rule 11 violation he alleges is a "structural error" that can overcome any and all bars to collateral (or any other) review and inexorably call for vacatur of a conviction derived from the plea. As the United States Supreme Court observed when addressing the failure of a federal district court to provide that very same caution during a change-of-plea colloquy: "The omission of a single Rule 11 warning without more is not colorably structural."[53] Examination of his alleged Rule 11 violation is not so simplistic as Mr. White suggests.

---

[51] *Dollard v. State*, 2020 WL 2393353, at *2 (Del. May 11, 2020) (citing *Younger*, 580 A.2d at 556).

[52] *Robinson v. State*, 291 A.2d 279, 281 (Del. 1972).

[53] *United States v. Dominguez Benitez*, 542 U.S. 74, 81 n.6 (2004).

Now, "[t]he better practice unquestionably is to comply literally and completely with every requirement of Rule 11."[54]  But "[a]bsolute perfection in the entry of a guilty plea is not required."[55]  And a "'rigid formalistic approach to compliance' [with each Rule 11 requirement] is not necessary."[56]  No, as Rule 11(h) expressly instructs:  "Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."[57]

Thus, were the Court to need address prejudice now under Rule 61(i)(3)—which, again, it need not given Mr. White's failure to prove cause for his default—it would have to determine whether there is a substantial likelihood that on direct appeal Mr. White could have convinced the Delaware Supreme Court that a Rule 11 error affected his substantial rights.

---

[54]   *United States v. de le Puente*, 755 F.2d 313, 315 (3d Cir. 1985); *United States v. Thibodeaux*, 811 F.2d 847, 848 (5th Cir. 1987) ("At the outset we reiterate that it is always best for a judge to adhere to the strict letter of Rule 11.").

[55]   *State v. Malloy*, 1999 WL 167769, at *2 (Del. Super. Ct. Feb. 25, 1999); *Thibodeaux*, 811 F.2d at 848 ("We have, however, refused to exalt form over substance in Rule 11 hearings.").

[56]   *Sommerville v. State*, 703 A.2d 629, 631 (Del. 1997) (quoting *Patterson v. State*, 684 A.2d 1234, 1237 (Del. 1996).  *See United States v. Carter*, 619 F.2d 293, 299 (3d Cir. 1980) ("We do not now specify or impose a rule which would result in the setting aside of a defendant's guilty plea in each instance where a district court in this circuit fails to adhere strictly to each term and requirement of Rule 11.").

[57]   Super. Ct. Crim. R. 11(h); *accord* Fed. R. Crim. P. 11(h) (same).  Mr. White relies heavily on *United States v. Missouri Valley Construction Co.* [,704 F.2d 1026 (8th Cir. 1983)], a federal circuit case decided before both the federal and our court adopted Rule 11(h) to correct what some courts had been led to believe—"that, on direct appeal, *all* violations of Rule 11 constituted reversible error." *United States v. Martinez*, 277 F.3d 517, 525 (4th Cir. 2002) (emphasis added).  "Rule 11(h) was added to clarify that Rule 11 error should not be deemed prejudice *per se*." *Id.*

### a. **Mr. White should have been given an express Rule 11(e)(2) advisory.**

Because of the victim's age at the time of the rape to which he pleaded guilty, Mr. White was subject to a minimum term of 25-years imprisonment.[58] The State agreed to limit its sentence recommendation to that minimum.[59] In effect then, the State had "ma[d]e a recommendation . . . for a particular sentence."[60] And Rule 11 calls for an advisory at the time of such a plea agreement's entry that "if the court does not accept the recommendation . . . the defendant nevertheless has no right to withdraw the plea."[61] The Court did not voice this specific admonition when it took Mr. White's plea and that error is manifest.[62] But that hardly ends the prejudice inquiry—and this is where a key difference in federal and Delaware Rules 11 matters. For unlike the effect such an error might have in the federal system,[63] in a

---

[58] DEL. CODE ANN. tit. 11, § 4205A(a)(2) (2012) (prescribing a minimum sentence of 25 years and a maximum term of life imprisonment for certain sex crimes against children less than 14 years old).

[59] *See* n.4, *supra*.

[60] Super. Ct. Crim. R. 11(e)(1)(B).

[61] Super. Ct. Crim. R. 11(e)(2) ("If the agreement is of the type specified in subdivision (e)(1)(B), the court *shall* advise the defendant that if the court does not accept the recommendation . . . the defendant nevertheless has no right to withdraw the plea.") (emphasis added).

[62] *See e.g.*, *United States v. Rivera-Clemente*, 813 F.3d 43, 47 (1st Cir. 2016) (noting that such an omission "is an error that is plain on the record"); *Martinez*, 277 F.3d at 532 (finding the district court erred "in failing to specifically advise [Defendant] that he would not have cause to withdraw his guilty pleas if the court rejected the Government's sentencing recommendation").

[63] *See Rivera-Clemente*, 813 F.3d at 47 (observing such error "relates to a 'core concern' of Rule 11" because it goes to the defendant's "'knowledge of the consequences of the guilty plea'") (quoting *United States v. Noriega-Millàn*, 110 F.3d 162, 166-67 (1st Cir. 1997)).

proceeding under this Court's present Rule 11 there is far less chance for confusion or misapprehension.

In 1974, Federal Rule 11 was rewritten and added, *inter alia*, two specific provisions that spoke to certain sentencing concessions the government might make in a plea agreement.[64] The first allows the government to recommend the imposition of a particular sentence; such a recommendation is not binding on the court.[65] Under the second provision, the parties can agree that a given sentence is appropriate to the disposition of the case; that joint recommendation does bind the court upon its acceptance of the plea agreement.[66] The federal rule then prescribes certain cautions and procedures allowing withdraw where appropriate.[67]

This Court adopted a provision modeled after the federal rule's binding-recommendation provision in 1992. Under this Court's Rule 11(e)(1)(c), the State and defendant could "[a]gree that a specific sentence is the appropriate disposition of the case."[68] And while such an agreement did not absolutely "bind" the

---

[64] Fed. R. Crim. P. 11, advisory committee note (1974).

[65] Fed. R. Crim. P. 11(c)(1)(B).

[66] Fed. R. Crim. P. 11(c)(1)(C).

[67] Fed. R. Crim. P. 11(c)(3)(B) (the court must advise the defendant that she has no right to withdraw the plea if the court does not follow the non-binding recommendation); *id*. at 11(c)(5) (setting forth the procedure for advising the defendant of the rejection of a binding recommendation and the defendant's withdrawal of her plea).

[68] *See Martin v. State*, 1995 WL 264521, at *1 (Del. Apr. 28, 1995) (explaining then-extant Superior Court Criminal Rule 11(e)(1)(c)).

-19-

sentencing judge, if the Court rejected the agreed-upon sentence, the defendant at sentencing had "the opportunity to then withdraw the plea."[69]  But those specific provisions permitting agreed-upon-sentence plea agreements and plea withdrawals—while still in force today under federal Rule 11—were short-lived in Delaware.  They were repealed in 2001.[70]

So in a system where both non-binding and binding plea agreements are permitted, and the provisions allowing for such sit side-by-side, a more exacting requirement for a colloquying judge to advise and caution which it might be is understandable.  No doubt, the danger of confusion or misapprehension by a criminal defendant entering a plea in federal district court is far greater.  But not here—where for more than two decades there's been no such thing as a sentence-binding plea agreement and where no imposed sentence can ever incite some right for one to withdraw his or her plea.

All that said, our Rule 11(e)(2)'s language is unequivocal and the Court

---

[69]  *Id.* (quoting and explaining provisions of and procedures under then-extant Superior Court Criminal Rules 11(e)(1)(c), (e)(2), and (e)(3) that governed agreed-upon-sentence pleas); *see also Manis v. State,* 779 A.2d 884, 885-86 (Del. 2001) (same); *Jamison v. State*, 2003 WL 21295908, at *2 n.7 (Del. June 3, 2003) (explaining "Rule 11(e)(1)(c) allowed the State and a defendant to enter into a binding agreement regarding a defendant's sentence.  If the agreement was not accepted by the Superior Court, then the defendant was permitted to withdraw the plea and proceed to trial.").

[70]  *See Weatherspoon v. State*, 2004 WL 542163, at *1 n.4 (Del. Mar. 15, 2004) ("Superior Court Criminal Rule 11(e)(1)(c) was repealed effective July 1, 2001."); *Jamison,* 2003 WL 21295908, at *2 n.7 (same).

doesn't intend to minimize the rule's safeguards here.  But this backdrop is important when determining whether Mr. White has met his burden of establishing whether the Rule 11(e)(2) error affected his substantial rights.[71]

### b. **Mr. White cannot demonstrate the omission of the Rule 11(e)(2) advisory affected his substantial rights.**

Given the plain error standard applicable to this particular claim, had he raised this issue on direct appeal, Mr. White would have had to have shown a reasonable probability that, but for the Rule 11(e)(2) error, he would not have entered the plea.[72] More specifically, Mr. White would have to demonstrate some "realistic likelihood that [he] labored under the misapprehension that his plea could be withdrawn" should the Court not follow the State's recommendation and that that misapprehension led him to plead guilty.[73]  In determining whether he had such misapprehension and acted on it, the Court must consider all relevant facts.[74]  And here, the record belies Mr. White's belated self-serving averments that he believed

---

[71]  Super. Ct. Crim. R. 11(h).

[72]  *See Rivera-Clemente*, 813 F.3d at 47; *Martinez*, 277 F.3d at 532.

[73]  *de le Puente*, 755 F.2d at 315; *Martinez*, 277 F.3d at 533 (where inmate failed to demonstrate his guilty plea was contingent on his being able to withdraw it the Government's recommendation was rejected, he failed to show that the Rule 11(e)(2) violation affected his substantial rights).

[74]  *Dominguez Benitez*, 542 U.S. at 80 ("[I]n assessing the effect of Rule 11 error, a reviewing court must look to the entire record, not to the plea proceedings alone."); *Rivera-Clemente*, 813 F.3d at 47 (court considered "a number of factors").

the Court was bound to sentence him in accord with the State's recommendation and that he could withdraw his plea based solely on a rejection of that recommendation.[75]

Mr. White understood the Court was not bound by the State's recommendation—that he faced the range of 25 years to life imprisonment. Prior to entering his plea, his counsel explained that sentencing range to him.[76] Counsel also explained how the pre-sentence investigation could impact whether the Court would exceed or follow the State's 25-year recommendation.[77] The Court, when accepting his guilty plea, explained the full sentencing range, which Mr. White confirmed he understood.[78] Mr. White had also confirmed his understanding of the full sentencing range in his written plea paperwork. And in those forms he told the Court that no one had promised him what his sentence would be.[79] At the end of his colloquy, the Court explained the impending presentence investigation procedures to Mr. White, noting that a report would be generated "so that the Court can better consider what the appropriate sentence would be in this case."[80]

---

[75] Def.'s Rule 61 Mot. at 22 ("Had I known the plea didn't mean I would get the 25 and that I'd have no right to withdraw if the court rejected, I'd have went to trial.").

[76] Counsel's Rule 61(g) Affidavit at 2.

[77] *Id.*

[78] Plea Colloquy Tr. at 7.

[79] Plea Agreement and TIS Guilty Plea Form at 2.

[80] Plea Colloquy Tr. at 10–11.

Mr. White's filings and statements after his plea have never suggested that he believed that the Court could not sentence him to more than 25 years—though he was always angling for less[81]—only that he did not think it would. And most recently, Mr. White has told the Court that he "absolutely" knew his sentencing exposure was 25 years to life,[82] that the Court had the discretion to exceed that range,[83] and that the Court could outright reject the agreement.[84]

Most importantly here, there is simply no credible evidence in the record to even hint that Mr. White was under some misapprehension that the Court's rejection of the State's sentencing could trigger some right to withdraw his plea. To the contrary, though Mr. White mused with his counsel over other bases for withdrawing his plea,[85] he never intimated that he could do so if the Court exceeded the 25-year recommendation. Simply put, there is no evidence that Mr. White entered his plea under some misapprehension that he could withdraw it if the sentencing judge did

---

[81]  *E.g.*, Counsel's Rule 61(g) Affidavit, Ex. A at 8-9 (". . . I'm looking into every possible detail for a possible lighter sentence . . . .).

[82]  PCR Hr'g Tr. at 4.

[83]  *Id.*

[84]  *Id.* at 5.

[85]  *E.g.*, Counsel's Rule 61(g) Affidavit, Ex. A at 6 (discussing possibly withdrawing his plea because he hadn't seen the victim's "confession on video" nor the time stamps from the pictures and videos he took of her); *id.* at 7 (counsel advising against withdrawing the plea on those bases); *id.* at 8-9 (Mr. White voices more quibbles with the State's proof and discusses means of securing a lesser sentence while acknowledging that he "understand[s] that no one can make that kind of promise").

not follow the State's recommendation; nor is there any credible evidence—even in the now-expanded record—that Mr. White would not have entered his plea had the Court included the Rule 11(e)(2) advisory. Both are keys to any viable claim that his substantial rights were affected by its omission.[86]

So Mr. White hasn't carried his burden of demonstrating the needed prejudice under Rule 61(i)(3)—there just is no substantial likelihood that on direct appeal Mr. White could have convinced the Delaware Supreme Court that a Rule 11(e)(2) error affected his substantial rights. Indeed, there seems no likelihood at all given the prior review of Mr. White's guilty plea by our Supreme Court on direct appeal.

As mentioned before, Mr. White filed specific points challenging the validity of his guilty plea under Supreme Court's Rule 26(c). The Supreme Court found that "the disposition of [certain of Mr.] White's [ ] claims hinge[d] on the Court's determination of whether [Mr.] White entered his guilty plea knowingly, intelligently, and voluntarily."[87] The Supreme Court noted that under its Rule 26(c), it "must conduct its own review of the record in order to determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided

---

[86] *See United States v. Coleman*, 961 F.3d 1024, 1028 (8th Cir. 2020) (one must satisfy the substantial-rights showing to gain relief for a Rule 11 error); *see also de le Puente*, 755 F.2d at 315; *United States v. Delacruz*, 144 F.3d 492, 494 (7th Cir. 1998); *Thibodeaux*, 811 F.2d at 848; *Martinez*, 277 F.3d at 533.

[87] *White I*, 2018 WL 6167326, at *2.

without an adversary presentation."[88]  After detailing its examination of Mr. White's plea colloquy, the Court "conclude[d] that [Mr.] White's [was a] knowing, intelligent, and voluntary guilty plea."[89]

## V. CONCLUSION

Foremost, Mr. White cannot overcome the procedural bars set forth in this Court's Criminal Rule 61.  Accordingly, his prayer to strike his plea invoking that rule fails.

Procedural bars aside, "a technical violation of Rule 11(e)(2) that has no effect on a defendant's decision to plead guilty cannot be used to reverse a conviction and sentence simply because the defendant is displeased with the ultimate sentence."[90]  Just so here.  Mr. White has shown nothing more than a harmless omission from his plea colloquy—that would never gain him the relief he seeks via this Court's Criminal Rules 11 or 61.

Mr. White's Motion for Postconviction Relief must, therefore, be **DENIED**.

**IT IS SO ORDERED.**

_____
Paul R. Wallace, Judge

Original to Prothonotary

---

[88]  *Id.* at \*1.

[89]  *Id.* at \*3 ("We have reviewed the record carefully and conclude that [Mr.] White's appeal is wholly without merit and devoid of any arguably appealable issue.").

[90]  *United States v. Vaughn*, 7 F.3d 1533, 36 (10th Cir. 1993) (cleaned up).